Ralph Adam FINE, Petitioner-Respondent,

v.

The ELECTIONS BOARD of the State of Wisconsin, Appellant-Petitioner.

Supreme Court

*No. 79–074. Submitted on briefs March 3, 1980.—
Decided April 1, 1980.*

(Also reported in 289 N.W.2d 823.)

 ■

For the appellant-petitioner the cause was submitted on the briefs of *Kevin J. Kennedy,* legal counsel, state elections board.

For the respondent the cause was submitted on the brief of *Ralph Adam Fine* of Milwaukee, *in propria persona.*

BEILFUSS, C.J. This case arises out of a dispute between petitioner-respondent Ralph Adam Fine and the State Elections Board over the manner in which petitioner Fine's name was to appear on the official ballot for the Spring 1979 judicial election. Fine was a candidate for, and was ultimately elected to, Branch 34 of the Circuit Court for Milwaukee county.

Prior to the election Fine wrote to the Elections Board asking that he be permitted to appear on the ballot as "Ralph Adam Fine." As a prominent member of the Milwaukee community, Fine had consistently used his full legal name, including first and middle names, in all of his public and private affairs. He had practiced law in Milwaukee under the name of Ralph Adam Fine for a number of years and had written several articles and two books on law-related topics, all of which were published under the name of Ralph Adam Fine. From mid-1974 through 1975, Fine served as a legal reporter for a Milwaukee area television station and from 1975 through the first part of 1978 he hosted a local "talk show" on that same station. In both of these roles he was consistently referred to as Ralph Adam Fine.

For these reasons, Fine felt he was generally known in the community as Ralph Adam Fine and would be more easily recognized if he appeared on the ballot under that name.

The Elections Board denied Fine's request. In a formal written opinion issued for statewide publication, Op. El. Bd. 78–16, the board stated that, under sec. 7.08 (2) (a), Stats.,[1] a candidate for public office was not entitled to appear on the official ballot with both a full first name and a full middle name. Conceding that the words of the statute were not clear enough by themselves to compel an answer either way, the board concluded that the related statutes and statutory history imply an intent on the part of the legislature to prohibit the use of both a complete first and middle name.

Fine petitioned for judicial review of the board's opinion pursuant to ch. 227, Stats. Following a hearing, the trial court concluded that sec. 7.08(2)(a) was unconstitutional and ordered that Fine be certified as a candidate in the Spring election under the name "Ralph Adam Fine." The trial court agreed with the board that, properly construed, sec. 7.08(2)(a) would not permit a candidate to appear on the ballot under both his full first

---

[1] "(2) CERTIFIED LISTS. (a) As soon as possible after the closing date for filing nomination papers or after the canvass of the primary vote, but no later than the deadlines established in s. 10.06 transmit to each county clerk a certified list of all candidates on file in its office for which electors in that county may vote. The list shall designate the order of arrangement and contain each candidate's name in any combination of initials for the first and middle names, plus the last name, but no nicknames, abbreviations or titles; the candidate's residence and post-office address; the office for which the person is a candidate; and, the party or principle the candidate represents, if any, in 5 words or less. Names of candidates nominated under s. 7.38(3) or 8.35 shall be certified by the board upon filing of the necessary papers with it. Nothing in this paragraph precludes the use by a candidate of a former legal surname as a middle name as well as the candidate's complete first name."

and full middle names. However, it further concluded that, read in this way, sec. 7.08(2)(a) conflicted with the equal protection provision of the Fourteenth Amendment to the United States Constitution by permitting a candidate with a former legal surname to be identified on the ballot with three full names, but limiting a person without a former legal surname to only two full names plus an initial. The trial judge stated he could fathom no legitimate state purpose that would be furthered by such a policy.

Pursuant to the trial court's order, Fine appeared on the ballot for the judicial election under the name "Ralph Adam Fine," and was elected circuit court judge for Milwaukee county.

In the meantime, the board appealed the judgment and order of the trial court to the court of appeals. After summarily dismissing an initial contention that the issue was rendered moot by the intervening election, the court of appeals, in an unpublished opinion, affirmed the trial court's judgment and order. Like the trial court, the appeals court concluded that the board had properly determined that sec. 7.08(2)(a), Stats., prohibited, as a matter of right, the use by a candidate of both a complete first and middle name. But rather than reach the constitutional issue upon which the trial court based its decision, a majority of the court held that the board had "inherent power to modify the strict terms of the statute in cases of possible voter confusion" as it had in fact done in the past.[2] The majority then went on to order

[2] Despite the statute's express prohibition against the use of nicknames on the ballot, the board permitted presidential candidate James E. Carter to appear on the 1976 Wisconsin primary ballot as "Jimmy Carter" pursuant to a formal advisory opinion issued by the attorney general on March 4, 1976. The attorney general pointed out that the candidate was known as "Jimmy" rather than "James E." Carter and concluded that, in order to avoid possible voter confusion and to insure that the will of the

the board to promulgate standards to govern the use by a candidate of a non-conforming name on the ballot.

We agree with the court of appeals that, even though the election has already been held with Fine's name appearing on the ballot as requested, the case should not be dismissed as moot. In *Mueller v. Jensen,* 63 Wis.2d 362, 217 N.W.2d 277 (1974), also a case in which this court was presented with an election-related issue after the particular election in question had been held, we noted that "the great weight of authority supports the proposition that an appellate court may retain an appeal for determination if it involves questions of public interest even though it has become moot as to the particular parties involved." *Id.* at pages 366–67. The issue that has been raised here is one that is likely to arise again and should be resolved by the court now to avoid further uncertainty. For these reasons we choose to decide this case on its merits.

Upon our review of those merits, however, we cannot agree with the court of appeals, or the trial court, that sec. 7.08(2)(a), Stats., is sufficiently clear on its face to prevent a candidate from appearing on a ballot with both his complete first and middle names. Sec. 7.08(2) (a) requires the board to transmit to each county clerk a certified list of all the candidates on file in its office for which electors in that county may vote. The list is to contain each candidate's name in the form in which it is to appear on the ballot. The statute specifically provides

voters is accurately determined, the name "Jimmy" Carter should be used.

The appeals court also noted several other instances in which names that did not conform to the board's restrictive construction of sec. 7.08(2)(a) were nevertheless placed on the ballot. The names "Ernst John Watts," "William Bradford Smith" and "Mary Lou Munts" were all at one time or another certified for placement on the ballot even though the board now contends that sec. 7.08(2)(a) permits the use of only one given name.

in part: ". . . The list shall designate the order of arrangement and contain each candidate's name in any combination of initials for the first and middle names, plus the last name, but no nicknames, abbreviations or titles. . . ."

The board has construed this language to mean that a candidate may appear on the ballot with either his first or middle name in addition to his last name. An initial may be used in place of either or both given names of a candidate, but under no circumstances, in the board's view, could both a first and middle name be used in full. Accordingly, in this case the board was willing to allow Fine to appear on the ballot as "Ralph A. Fine," "R. Adam Fine," "Ralph Fine," or "Adam Fine," or "R. A. Fine," but not as "Ralph Adam Fine."

We do not believe the language quoted above supports this construction. The language of the statute simply states that the names of the candidates shall be listed with the last name and "any combination of initials for the first and middle names." It does not say that either the first or middle name can appear in full, but rather that both shall appear "in any combination of initials." In order to arrive at the board's construction of the statute, the use of initials in place of the first and middle names must be viewed as permissive or optional. But if this is so, then there is nothing to prevent a candidate from using both given names in full and no initials. None of the language of the statute demands the kind of "either-or," "one-full-name-only," construction that the board has chosen. The statute either requires that initials be used in place of both given names, or, if the use of initials in place of a given name is deemed optional, it permits the use of both given names in full.

The last sentence of sec. 7.08(2)(a), Stats., indicates that the use of initials in place of a candidate's full first and middle names is optional under sec. 7.08(2)(a) and that, therefore, candidates running for elected office are

entitled to appear on the ballot under both their given names as well as their surname. That sentence reads as follows: "Nothing in this paragraph precludes the use by a candidate of a former legal surname as a middle name as well as the candidate's complete first name." Added to sec. 7.08(2)(a) by ch. 136 of the Laws of 1969, this sentence was intended to permit candidates who were also known by a prior legal surname to include that name on the ballot as a middle name. In addition, however, it demonstrates quite clearly that the legislature did not intend to require the use of an initial in place of a candidate's complete first name. Because the statute draws no distinction between first and middle names, the same conclusion would seem to follow with respect to a candidate's middle name. The use of an initial in its place is optional. Thus, the statute permits the use of both complete given names plus the candidate's surname.

In arriving at its restrictive interpretation of sec. 7.08(2)(a), Stats., the board admitted that it was required to go beyond the language contained therein. "Taken alone," it said, "the words of the statute are not clear enough to compel an answer either way." But when considered along with its legislative history and sec. 8.15(5),[3] which sets out the form for a candidate's

[3] "(5) Each nomination paper shall have substantially the following words printed at the top:
"I, the undersigned, a qualified elector of the . . . . Ward, . . . . Aldermanic district, (Town, City, Village) of . . . . , County of . . . . , State of Wisconsin, representing the principles of the . . . . party, do hereby nominate . . . . , (include first and last name plus middle initial, or initial, middle and last name; the use of an initial for a first or middle name is optional, but no nicknames, abbreviations or titles), who resides at . . . . Street, (Town, City, Village) of . . . . , Wisconsin, as a candidate for the office of . . . . , to be voted for at the primary to be held on the . . . . day of . . . . , 19 . . , as representing the principles of the above named party, and I declare that I intend to support the candidate named herein."

nominating papers, the board concluded that only one of a candidate's given names could be placed on the ballot in full.

We see nothing in the legislative history of sec. 7.08 (2) (a), Stats., which compels the board's construction. In 1933, the legislature amended sec. 5.08, the predecessor to sec. 7.08, to require both the given and surname of a candidate to appear on the ballot. Prior to that time the statute required the secretary of state to certify the names of the candidates as they were to appear on the ballot, but did not prescribe the form in which they were to appear.

Although it was unclear under the new statute whether all of a candidate's given names were to be included on the ballot, the attorney general stated in response to a formal inquiry by the secretary of state on this point that "the best practice is to give all the given names of the candidates, unless the names are too numerous, when, in such case, initials may be used for those given names by which the candidate is not generally known." 23 Op. Atty. Gen. (1934) 516, 517–18.

In 1959, the statute was again amended, this time to provide that the certified list shall contain "the first and last name and middle initial or initial, middle and last name, or the familiarly and commonly abbreviated form of the first or middle name commonly used by the candidate, but no nicknames or titles." The statute expressly stated that ". . . the use of an initial for a first or middle name shall be optional." This is also in substance the present form of sec. 8.15(5), Stats., which governs the form of nominating papers.

The board contends that this language clearly expresses an intent on the part of the legislature to limit a candidate to only one given name. Because the legislature's amendment and reenactment of that section as sec. 7.08(2) (a), Stats., was intended only as a restate-

ment of prior law, it argues, the two must be construed alike.

We cannot accept the board's contention that sec. 8.15 (5), Stats., and the earlier form of sec. 7.08(2)(a) clearly prohibit a candidate from appearing on the ballot under more than one complete given name. Although those statutes do provide that the list is to contain a given name, initial and last name they also expressly state that the use of the initial is optional.

The board argues that this simply means that a candidate may appear under only two names, instead of two names and an initial. But no reason appears why it might not just as well mean that instead of an initial, the second given name may be used in full. We think that, at the very least, sec. 8.15(5), Stats., and the former sec. 7.08(2)(a) are themselves ambiguous in this regard and for that reason could hardly support the restrictive construction of the present sec. 7.08(2)(a) which the board has chosen.

The board also argues that its construction of the statute is consistent with the public policy of assuring ballot uniformity and economy and that it also provides for reasonable candidate identification without turning the ballot into a medium for campaign advertising. On the basis of these important interests that its claims are served by its interpretation, the board argues that its construction should be upheld.

A state's interest in keeping its election ballots within manageable, understandable limits has been recognized by the United States Supreme Court as being of the highest order. *Lubin v. Panish,* 415 U.S. 709, 715 (1974) ; *Bullock v. Carter,* 405 U.S. 134, 145 (1972). However, those cases which have acknowledged this interest have addressed it only in the context of reviewing state procedures which restrict the right of a candidate to appear on the ballot at all, not the right to appear under the name by which he is commonly known. Unless

a state is permitted to limit the number of candidates that may appear on the ballot to those whose candidacy is not merely frivolous, the ballot could become a "laundry list" of names and the resulting vote could be so fragmentary as to be meaningless. *See Lubin v. Panish, supra,* 415 U.S. at 714–719.

It is not in this sense, however, that the board's construction is claimed to further the state's interest. In construing sec. 7.08(2)(a), Stats., as it has, the board is not limiting the number of candidates that may appear on the ballot, but rather the manner in which their names appear. Simply stated, the board is arguing that prohibiting candidates from using both complete given names on the ballot serves the state's interest of preserving space on its election ballots.

This asserted interest is certainly not comparable to that described by the United States Supreme Court in *Lubin v. Panish, supra,* 415 U.S. 709. Moreover, we cannot believe that there is such a shortage of space on the official ballots of this state that permitting those candidates who are known by and desire to use their full legal names in running for elected office to do so would in any way impinge upon the state's interest in keeping the ballots within manageable and reasonable limits.

We also find unpersuasive the board's contention that its construction of sec. 7.08(2)(a), Stats., should be upheld because it furthers the other state interests of maintaining uniformity on the ballot and preventing candidates from using it as a medium for campaign advertising. Even under the board's construction, the manner in which candidates' names appear on the ballot is not uniform. Candidates are permitted to use either their first or middle name plus an initial, or neither full given name and only initials, along with their last name. Permitting those candidates who so desire to use both their given names would hardly destroy uniformity on the ballot since very little existed in the first place.

We conclude the statutory language does not support the board's reading of sec. 7.08(2)(a), Stats., nor do any of the state interests asserted by the board justify the restrictive interpretation of that statute which it has placed upon it.

In fact, to the extent public policy enters into the question at all, it would seem much more supportive of a construction permitting candidates the use of both their given names. The paramount interest of the state in regulating elections is to insure that they are conducted as fairly as possible and in such a way as to insure that the will of the electorate is accurately ascertained.

The board's construction would seem in conflict with this interest in that it in effect permits most candidates to appear on the ballot under that version of their legal name by which they are commonly known, but denies that right to others. Many people commonly use and are known by both their given names together with their last name. Especially for those with very common or simple surnames, the use of both given names may provide a significant degree of distinction without which they would be less easily recognized. For the board to deny such persons the use of their full legal name would not only be unfair, but may also lead to greater voter confusion than would otherwise exist. Thus, even when considered in light of the underlying purpose for state regulation of election ballots, the board's construction of sec. 7.08(2)(a), Stats., cannot stand.

*By the Court.*—Judgment affirmed.