STATE EX REL. LA CROSSE TRIBUNE, David B. Offer, Managing Editor of La Crosse Tribune, and Terry Rindfleisch, Petitioners,

v.

CIRCUIT COURT FOR LA CROSSE COUNTY, the Honorable James P. Fiedler, presiding, State of Wisconsin, and Peter E. Berg, Respondents.

Supreme Court

*No. 82–1614–W. Argued September 6, 1983.— Decided November 30, 1983.*

(Also reported in 340 N.W.2d 460.)

For the petitioners there were briefs by *Daniel T. Flaherty, Ellen M. Frantz,* and *Johns, Flaherty & Gillette, S.C.,* La Crosse, and oral argument by *Daniel L. Flaherty.*

For the respondents the cause was argued by *James H. McDermott,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

Amicus Curiae brief was filed by *James P. Brody, Thomas L. Shriner, Jr.,* and *Foley & Lardner,* Milwaukee, for Wisconsin Freedom of Information Council.

Amicus Curiae brief. was filed by *Russell D. Feingold, Brady C. Williamson,* and *La Follette, Sinykin, Anderson & Munson,* Madison, for the Wisconsin Newspaper Association.

HEFFERNAN, C. J.   This is a review of an order of the court of appeals denying the petition of David B. Offer, managing editor of the La Crosse Tribune, and Terry Rindfleisch, reporter, for a writ of mandamus directing the La Crosse County Circuit Court to produce a transcript of *voir dire* proceedings held *in camera.* The petitioners also asked for an order prohibiting the La Crosse County Circuit Court from conducting *in camera voir dire* proceedings in violation of sec. 757.14, Stats. The court of appeals denied the writ because the *voir dire* had been completed and because there was no proof that extraordinary hardship would result if the transcript of the *in camera voir dire* was not produced immediately.

Although the underlying controversy has been tried, we reverse the court of appeals because the question posed merits determination by this court. We hold that the *in camera voir dire* of venire panel members in the underlying criminal prosecution constituted an abuse of discretion. We also reverse that portion of the court of appeals order which declined to direct the immediate production of the transcript of the *in camera* proceeding.

The petition to the court of appeals arose out of the decision of James P. Fiedler, La Crosse County Circuit Judge, to exclude the public from the *voir dire* of potential jurors and to hold it in chambers in the presence only of the parties and persons constituting the "court."

The underlying trial was a criminal action against Attorney Peter E. Berg. The complaint alleged that Berg had concealed property from its lawful owners without their consent and with intent to deprive them

permanently of possession, contrary to sec. 943.20(1)(a), Stats.

The criminal trial commenced on August 26, 1982, in the Circuit Court for La Crosse County before Judge James P. Fiedler. *Voir dire* of the jury panel was commenced that same day. The petitioner, Terry Rindfleisch, was present in the courtroom, together with members of the public. After approximately one-half of the panel indicated that they had learned something about the case from the local news media, counsel suggested that there be an individual *voir dire* of those potentially contaminated panel members in the judge's chambers. Judge Fiedler retired to chambers with counsel, the defendant, the court reporter, the clerk, and a bailiff. Rindfleisch, the La Crosse Tribune's reporter, followed them into the judge's chambers. When, upon the judge's request for identification, Rindfleisch said he was a reporter for the Tribune, he was ordered to leave. Rindfleisch immediately objected to the judge's order and asked that he be allowed to read a statement into the record. Judge Fiedler denied that request and Rindfleisch left the chambers.[1]

---

[1] The statement which Rindfleisch would have read was subsequently placed in the record. The statement recited:

"STATEMENT TO READ IN COURT IF AN EFFORT IS MADE TO CLOSE A PRETRIAL HEARING OR TRIAL

"Your honor, I am ———, a reporter for the La Crosse Tribune, and a citizen of Wisconsin. Both for myself and for my newspaper I respectfully object to (the motion to close) (the closing of) this proceeding, and request that the court honor my right as a member of the public and as a member of the press to attend it.

"I further respectfully request, if the court is going to consider closing the proceeding, that the court grant me and my newspaper an opportunity, through our attorneys, to present legal authority and argument why the proceeding should not be closed. I believe we have the right to be heard through our attorneys on this issue under both the state and federal constitutions.

Upon leaving the courtroom, Rindfleisch, pursuant to prior instructions of the Tribune's management, asked Attorney Daniel T. Flaherty to appear on his behalf and on behalf of the management of the La Crosse Tribune. Judge Fiedler refused to answer Flaherty's telephone calls; and when Flaherty came to the courthouse and asked to make a statement on the record between the questioning of the individual panel members, the request was refused. He was requested to leave the chambers during the *voir dire* and did so. Only after the completion of the in-chambers *voir dire* was Attorney Flaherty permitted to make the following statement on the record:

"I am here appearing for the *La Crosse Tribune* and the gentleman with me is Mr. David B. Offer, Managing Editor of the *La Crosse Tribune*. I am here because I was advised by Mr. Offer and by Mr. Terry Rindfleisch,

"I am not a lawyer and I am not going to try to make a legal argument. But I do want the court to know now the basis of our position that the proceeding should be open. I claim the right to attend this proceeding (1) under both the federal and state constitutions, and (2) under 757.14 of the Wisconsin Statutes, which says that the sittings of every court shall be public and that every citizen may freely attend them. The limited exceptions to that statute do not apply to this proceeding.

"Motions to close hearings have been prompted by the United States Supreme Court's decision in Gannett vs. DePasquale. But in that case—in which incidentally, the trial court gave the press a hearing on the closure issue—the Supreme Court decided only that there was no federal constitutional right to attend the hearing in question. The court did not deny states the power to give the public and the press rights of access under state law. We maintain that the law of Wisconsin does give such rights. In fact, I understand that both before and after Gannett, Wisconsin courts, applying Wisconsin law, have denied motions to close pre-trial hearings. They have been able to protect the rights of the defendant without the extreme measure of closing the doors of the courtroom. We believe the same is true here, and I respectfully request an opportunity for our counsel to be heard."

an employee and news reporter for the *Tribune* that Mr. Rindfleisch had been excluded from the *voir dire* which had just been completed in secret in chambers and I was advised that the court had properly decided that the jurors should be questioned one by one regarding any prior knowledge of the case they had ascertained through the media, so as not to contaminate other jurors regarding such information or knowledge. I believe that the court's exclusion of Mr. Rindfleisch from such portion of the *voir dire* was in violation of sec. 757.14 of the Wisconsin Statutes. I know of no statutory exception to sec. 757.14 nor of any case law which would justify the court's excluding the public or a member of the media from such *voir dire*. If Mr. Rindfleisch had been allowed to make the statement he intended to make before the court removed him from chambers, he would have read into the record a statement which I am now asking the court reporter to make as Exhibit 1. I am asking that the court open such hearing to the public and to Mr. Rindfleisch or to advise us what authority the court felt would justify holding such a hearing privately so as to exclude Mr. Rindfleisch."

In an on-the-record statement, Judge Fiedler refused to open the hearing to the public or to the press. Judge Fiedler's statement reveals that neither counsel objected to Rindfleisch's presence in chambers. Judge Fiedler said, "The court on its own excluded the Tribune reporter." He stated that he held the *voir dire* in chambers not to protect Berg but to protect the individual panel members. He explained that the members of the panel who had read about the criminal action or heard about it were examined in chambers so that their impressions would not affect other members of the panel. He also stated those members of the panel were questioned in chambers to protect them from "embarrassment." The trial judge refused to listen to Attorney Flaherty's arguments until the *voir dire* proceedings were completed in chambers. Flaherty then asked for a transcript of the proceedings conducted in chambers. The judge denied that request when he stated that his

reporter would be busy and it would be several weeks before a transcript could be prepared. The oral argument in this court revealed that no transcript of the *voir dire* has been made.

On August 27, 1982, the day after the secret *voir dire*, David B. Offer, managing editor of the La Crosse Tribune, and Terry Rindfleisch petitioned the court of appeals for a writ to compel the production of the *in camera* transcript and for an order prohibiting an *in camera voir dire* and further proceedings in the trial. On that same day, the court denied the petitioners' request for a stay of the Berg trial and, by a written order on September 28, 1982, denied the other relief sought. In that order the court of appeals found that the controversy was moot. The court's order stated:

"Because the voir dire has been concluded, we need not decide whether the trial court properly excluded petitioner Rindfleisch . . . ."

It denied the demand of the petitioners for the immediate production of the transcript because there was no showing of extraordinary hardship as a result of the failure to produce the transcript. The dissenting judge of the Court of Appeals would have decided whether the trial court acted properly and within its powers in excluding Rindfleisch from the *in camera voir dire*.

The posture of the case has changed substantially from the time Berg was placed on trial and the *in camera voir dire* was held of the potential jurors. At this juncture, the *voir dire* of the members of the panel has been completed and the trial itself has long been over. The request contained in the petition to the court of appeals that the criminal trial be stayed is moot, and no meaningful order affecting the Berg trial could be issued by this court. Moreover, as the court of appeals pointed out, the *voir dire* was completed even at the time the application for the supervisory writ was made to the court of ap-

peals. In one respect at least, the situation presented is a classic case of mootness. This court has defined "mootness" in the following words:

"A moot case has been defined as one which seeks to determine an abstract question which does not rest upon existing facts or rights, or which seeks a judgment in a pretended controversy when in reality there is none, or one which seeks a decision in advance about a right before it has actually been asserted or contested, or a judgment upon some matter which when rendered for any cause cannot have any practical legal effect upon the existing controversy." *Wisconsin E.R. Bd v. Allis-Chalmers W. Union*, 252 Wis. 436, 440-41, 32 N.W.2d 190 (1948).[2]

Ordinarily, this court, like courts in general, will not consider a question the answer to which cannot have any practical effect upon an existing controversy. It is not claimed by either party that the disposition of this case could have any effect upon the criminal action brought against Peter Berg. Nor can there be any present practical effect upon the resolution of the controversy between the newspaper and the trial judge in respect to his determination to close the Berg *voir dire* to the Tribune's reporter.

It is generally thought to be in the interest of judicial economy not to continue to litigate issues that will not affect real parties to an existing controversy. On the other hand, it is hardly in the interest of judicial economy or in the interest of the law-declaring function of this court if matters of serious public concern which are likely to cause judicial disputes in the future are not

---

[2] *See also, Fort Howard Paper Co. v. Fort Howard Corp.*, 273 Wis. 356, 360, 77 N.W.2d 733 (1956); *State ex rel. Ellenburg v. Gagnon*, 76 Wis. 2d 532, 535, 251 N.W.2d 773 (1977); *In Matter of K.H.*, 98 Wis. 2d 295, 300, 296 N.W.2d 746 (1980); and *Ziemann v. Village of North Hudson*, 102 Wis. 2d 705, 307 N.W.2d 236.

resolved when a factual basis on which a judicial declaration may be made to guide future conduct is presently before the court.

In recognition of these general considerations, this court has carved out certain exceptions to the general rule of dismissal for mootness. Accordingly, this court has held that it will retain a matter for determination although that determination can have no practical effect on the immediate parties: Where the issues are of great public importance, *State v. Seymour,* 24 Wis. 2d 258, 261, 128 N.W.2d 680 (1964); where the constitutionality of a statute is involved, *Doering v. Swoboda,* 214 Wis. 481, 253 N.W. 657 (1934); where the precise situation under consideration arises so frequently that a definitive decision is essential to guide the trial courts, *Carlyle v. Karns,* 9 Wis. 2d 394, 101 N.W.2d 92 (1960); where the issue is likely to arise again and should be resolved by the court to avoid uncertainty, *Fine v. Elections Board,* 95 Wis. 2d 162, 289 N.W.2d 823 (1980); or where a question was capable and likely of repetition and yet evades review because the appellate process usually cannot be completed and frequently cannot even be undertaken within the time that would have a practical effect upon the parties, *In re Marriage of Sandy v. Sandy,* 109 Wis. 2d 564, 566, 326 N.W.2d 761 (1982).

Moreover, the concept of mootness, in the sense that such cases will not be considered on review by an appellate court is affected by the nature of our court reorganization adopted in 1977 and 1978 by constitutional amendment and the action of the legislature. By virtue of the two-tiered appellate system then adopted, the court of appeals has the primary function of deciding whether a just result has been obtained between the particular parties. This court has a law-declaring function,

that is, determining on common-law principles what the law should be in view of the statutory and decisional law of the state and in view of the general trend of the law. Thus, this court, unlike the court of appeals, has been designated by the constitution and the legislature as a law-declaring court. It is not inappropriate for this court, where a problem is likely to recur, to declare the law for the guidance of other courts, even though the particular controversy is moot.

Although our decision in this case can have no direct effect upon Peter Berg, the La Crosse Tribune, David B. Offer, Terry Rindfleisch, or Judge Fiedler, it is appropriate that we declare the law in respect to the issue posed because the issue is of great public importance, it is likely to arise again, and almost inevitably review will be evaded because review cannot be taken promptly or without disrupting other important facets of a particular trial.

The arguments of counsel and the citation of authorities to which we have been referred indicate that whether there may be an *in camera voir dire* proceeding is an area of uncertainty which this court should clarify for trial judges, lawyers, and litigants. We accordingly address the issue of whether *voir dire* in a criminal case is governed by sec. 757.14, Stats.:

"757.14 **Sittings, public.** The sittings of every court shall be public and every citizen may freely attend the same, except if otherwise expressly provided by law on the examination of persons charged with crime; provided, that when in any court a cause of a scandalous or obscene nature is on trial the presiding judge or justice may exclude from the room where the court is sitting all minors not necessarily present as parties or witnesses."

It is argued by the petitioners that this statute in itself controls because a *voir dire* is a proceeding encom-

passed in a sitting of the court. It is also pointed out that the limitation on the scope of this legislative mandate—that a court sitting shall be public—is extremely limited, and that, under the statute, only minors who are not necessarily present as parties or witnesses may be excluded and then only when matters of a scandalous or obscene nature are being considered.[3]

If this view of the petitioners is adopted, the sole question presented in respect to the application of sec. 757.14, Stats., is whether the *voir dire* procedure was a sitting of the court.

Although the briefs appear to indicate that initially there was a dispute between the attorney general's office, which represented Judge Fiedler, and the petitioners in respect to what constituted a sitting of the court, at oral argument the parties substantially agreed that, when Judge Fiedler adjourned to his chambers, accompanied by the court reporter, the clerk of court, the bailiff, the counsel, and the accused, the *voir dire* proceedings in chambers constituted a "sitting" for the purpose of sec. 757.14, Stats. Thus, the respondent has substantially conceded the applicability of the statute. Nevertheless, past opinions of this court are instructive in respect to the meaning of sec. 757.14 and its application.

*Bloomer v. Bloomer,* 197 Wis. 140, 221 N.W. 734 (1928), involved a divorce trial, in which the judge took testimony in chambers to prevent the disclosure of salacious evidence to persons in the courtroom. The judgment of divorce was challenged because the testimony was taken contrary to sec. 247.12, Stats. (1928), that required that:

---

[3] Although sec. 757.14, Stats., states that sittings shall be public "except if otherwise expressly provided by law," we do not address the appropriateness or constitutionality of the exceptions that may be "otherwise expressly provided by law."

"The hearings and trials to determine whether or not a decree shall be granted shall be had *before the court* . . . and shall in all cases be public." (Emphasis supplied.)

The court in *Bloomer*, although not resting its decision on sec. 256.14, Stats. 1928, (now sec. 757.14), equated "before the court," as set forth in sec. 247.12, with "sittings of every court," as set forth now in sec. 757.14. Consequently, based upon the holding of *Bloomer v. Bloomer*, testimony elicited in chambers before a judge, a court reporter, a clerk, a bailiff, counsel, and parties constitutes a "sitting" of the court. The agreement of the attorney general and counsel for the La Crosse Tribune in the present case that the *voir dire* proceeding in Judge Fiedler's chambers constituted a sitting is consistent with the rationale of *Bloomer*.

A peripheral argument made by the attorney general is that sec. 757.14, Stats., has application only to "trials," *i.e.*, that point in a criminal proceeding subsequent to the swearing of the first witness. It is argued that a *voir dire* is a pretrial proceeding and, hence, not within the ban of sec. 757.14. However, this rationale is refuted by prior express precedents of this court. *State ex rel. Newspapers, Inc. v. Circuit Court*, 65 Wis. 2d 66, 221 N.W.2d 894 (1974) ; *State ex rel, Jackson v. Coffey*, 18 Wis. 2d 529, 118 N.W.2d 939 (1963) ; and *State ex rel. Niedziejko v. Coffey*, 22 Wis. 2d 392, 126 N.W.2d 96, 127 N.W.2d 14 (1964), expressly held that the term, "sitting," as used in sec. 757.14, encompassed *pretrial* immunity hearings in a John Doe proceeding.

The term, "sitting of a court," is a broad term, which this court ought to interpret in accordance with the clear and express legislative policy that courts are to be open to all the people. The fact that the court sits in the judge's chambers, rather than in a courtroom, is irrelevant to whether or not it constitutes a sitting of a court.

Judge Fiedler had with him in chambers the same functionaries that he would have had were the *voir dire* held in the courtroom. The procedures to determine the quality of panel members as jurors were conducted in chambers in the same way they would have been in the courtroom. Clearly, the venue or locale of the proceedings cannot legitimately transform what is otherwise required to be an open court proceeding into a closed-chamber procedure with the public and the press excluded.[4]

Looking then at the plain language of the statute, we conclude that it is the public policy of this state that a sitting of a court which encompasses the *voir dire* procedure is presumptively to be open to the public. The petitioners do not argue that, by virtue of sec. 757.14, Stats., Rindfleisch, a reporter, is to be given some special privileges because he represents the press. It is merely their contention that Rindfleisch, as one member of the public, was entitled to the presumptive requirement of openness mandated by the statute. In light of the conclusions heretofor reached in this opinion, Rindfleisch is entitled to the presumption of openness of court proceedings.

The question thus presented is whether, under the circumstances set forth in the record, Judge Fiedler properly exercised his discretion when he closed the presumptively open *voir dire* proceedings to the public. We are not confronted *ab initio* with the question of whether a judge has the discretion, under proper circumstances and after an appropriately expressed rationale, to close a sitting of a court. It is clear that a judge has that authority. Both counsel in oral argument acknowledged that a judge, in the proper exercise of discretion, may close a sitting of a court.

---

[4] We do not construe or interpret the effect of the statute in respect to whether the proceedings of a "judge in chambers" are to be open. It is clear that, in the instant case, court was "sitting." The proceedings were not those of a "judge in chambers."

Their position is supported by *State ex rel. Ampco Metal, Inc. v. O'Neill,* 273 Wis. 530, 78 N.W.2d 921 (1956). *Ampco* involved an action for damages and for injunctive relief to prevent the use by a competitor of certain of Ampco's trade secrets. To prove its case, Ampco was required to produce evidence which would have revealed the nature of its trade secrets, but to do so in open court would have resulted in the dissemination of information that Ampco, by its action, was attempting to keep secret. Its trial court motion that the proceedings be *in camera* was denied. On appeal to this court, the trial court's order denying the motion for *in camera* proceedings was supported by the trial judge's assertion that, under a statute identical to present sec. 757.14, Stats., the sittings of the court were *required* to be public and that the exceptions relating to the scandalous or obscene nature of the material was not applicable to close a hearing relating to trade secrets. After a discussion of the statute, Justice George Currie, writing for this court, stated:

"[I]t has long been recognized that the requirement for public trials is subject to certain inherent powers of the court to limit the public nature of trials in certain respects where the administration of justice requires it." P. 536.

He pointed out that, to hold a public trial in respect to a trade secret would destroy the very right sought to be vindicated. Pursuant to that premise, this court reversed the order of the trial court. Accordingly, this court recognizes that, although the language of sec. 757.14, Stats., presumptively mandates open sittings of a court, a trial judge, in the interests of justice, may under proper and compelling circumstances close a courtroom to the general public.

*Bloomer v. Bloomer* also recognized that, although what is now sec. 757.14 presumptively mandates that every sitting of a court shall be public, nevertheless, in the exercise of the inherent power of a court, there can be limitations on the admission of the public to a courtroom.

Upon the review of prior cases, it is apparent that the closure of a courtroom should ensue only when not to do so would defeat the very purpose of the court proceedings or would otherwise substantially impinge upon widely held public values which have been declared by the legislature in particular circumstances to supersede the general public policy of the open courtroom. Without making any determination in respect to whether the exceptions to the open courtroom that are set forth in the statute comport with the constitution, it is sufficient to point out that the legislature has concluded that minors may be excluded where the subject matter is scandalous or obscene. Thus, even in the face of the statutory edict of sec. 757.14, Stats., our court has found a sufficient reason to close the courtroom where the very purpose of the legal procedure would be circumvented (*Ampco*) or where the public morals, particularly of children, are likely to be subverted by an open-court hearing (*Bloomer v. Bloomer*).

It thus appears that, although a courtroom can be closed in the exercise of discretion, the circumstances necessary to trigger the discretion to close a courtroom must be compelling indeed.[5] One circumstance which

[5] In *State ex rel. Bilder v. Township of Delavan*, 112 Wis. 2d 539, 556, 334 N.W.2d 252 (1983), we relied upon *Ampco, supra*, and *State ex rel. Journal Co. v. County Court*, 43 Wis. 2d 297, 168 N.W.2d 836 (1969), for concluding that a custodian of court records, the court, has the inherent power to withhold records when the administration of justice so requires and when there

arguably could trigger a trial judge's discretion to close the court is that a fair trial could not otherwise be had. Clearly, however, the tenor and general position of Anglo-American law is presumptively to the contrary—that a fair trial cannot be had unless the trial is open and subject to public scrutiny.

In the instant case, there is no assertion by the trial judge that the *voir dire* was closed because the failure to do so would jeopardize the right of the defendant Berg to a fair trial. While it is within the discretion of a trial court in its inherent power to close a courtroom, the presumption is to the contrary, and reasons for such closing must be substantial. There must appear to be a reasonable likelihood that, unless the courtroom is closed, the very purpose of the trial will be subverted or other cherished and legislatively recognized values would be jeopardized. In the exercise of this discretion, we believe a court should, prior to the closing of the courtroom, follow the methodology outlined in *McCleary v. State,* 49 Wis. 2d 263, 182 N.W.2d 512 (1971).[6] The trial judge should recite on the record the factors that impel him to close the courtroom and why such factors override the presumptive value of a public trial. The findings of fact must be made with specificity. The process must be a rational one, and the rationality of it must be demonstrated on the record, showing that the conclusion was reached on facts of record or which are reasonably de-

is no less restrictive alternative. We, however, did not decide that such records could be withheld permanently. (P. 559) Moreover, our reliance upon *Ampco* emphasized that it would indeed be a rare situation that would trigger the court's inherent power to seal what would ordinarily be a public record.

[6] A prior hearing and public exercise of discretion as an antecedent to closing a courtroom is consistent with our open-meeting law, which requires a prior declaration of reasons for closing an otherwise public meeting. Sec. 19.85, Stats.

rived by inference from the record. Upon review an appellate court should be able to determine from the record whether discretion was in fact exercised and whether a reasonable judicial mind could have reached the conclusion it did. A trial court is required to hold a hearing and publicly reach a conclusion based on the exercise of discretion prior to ordering a closing. The parties, and members of the public present in court, may appear at such hearing. We agree with the position of counsel for the petitioners and the La Crosse Tribune that the standing of the media is not a special one but is identical to that of the public. The right secured statutorily by sec. 757.14, Stats., is one secured to the public and to the press as a part of the public.

In the instant case the trial judge conducted no hearing whatsoever prior to retiring to the closed sitting of the court. That in itself is evidence of the absence of the exercise of discretion and constitutes, under the rulings of this court, an abuse of discretion. For the purpose, however, of setting forth some standards for the guidance of trial courts, we examine the after-the-fact statements of Judge Fiedler submitted to the court of appeals in justification of his decision to exclude the public from a sitting of the court.

The reason expressed by Judge Fiedler did not fall within the statutory exceptions to the public right to attend sittings of the court. The material was not obscene nor salacious. Minors, who are generally considered to be the beneficiaries of the law's special solicitude, had no need of being prohibited from exposure to these *voir dire* proceedings. There was not even a hint that the defendant Berg's right of fair trial was at stake. Indeed, the affidavit of Judge Fiedler expressly stated that the *voir dire* was held as it was "not to protect Mr. Berg, but to protect the individual jurors."

*Ampco, supra,* and *Bloomer, supra,* recognized the inherent discretion of a trial judge to close a courtroom to assure justice would not be thwarted. No such reason was ever articulated by the trial judge here; and, to the extent that it was inferentially a factor, it was not necessary to close the sitting of the court. Judge Fiedler stated, in the affidavit submitted to the court of appeals:

"[O]ne of the reasons for holding the *voir dire* in chambers above-described was 'to protect the individual jurors from embarrassment' was referring to those prospective jurors who had previously heard or read something about the said case, and meant, and had in mind, the 'embarrassment' such prospective jurors would have suffered had they undertaken to testify fully and candidly, in the presence of said petitioner and La Crosse Tribune reporter, Terry Rindfleisch, with reference to what they had heard and read about said case, and its influence or lack thereof on their thinking about such case, and on their ability to sit therein as impartial jurors, in particular with reference to what they may have read in the said La Crosse Tribune, what weight or credence, if any, they accorded to what they read therein, and why they accorded comment of the said La Crosse Tribune on said case much, moderate, little or no weight or credence . . . ."

We conclude this statement does not demonstrate that the trial judge appropriately exercised his discretion.

In almost any criminal case of any interest, most jurors would have read or heard some account of the alleged crime in the media; and, no doubt, to some degree, the prospective jurors would have received some impression in respect to guilt or innocence. Moreover, in any case of any consequence, reporters from the media—audio, video, or print—are likely to be present in the courtroom. The rationale implicit in the affidavit of Judge Fiedler would lead to the conclusion that the *voir dire* of any juror who had any exposure to prior media

information must be considered in private. This rationale overlooks the essence and purpose of the *voir dire*. It is not reasonable to believe that a juror can or should have no preconceptions, leanings, or information about a particular event. A juror is not expected to have lived in isolation and to be totally unaware of any of the facts in respect to a matter which is the subject of litigation. What must be expected of a juror is a willingness to base his or her final verdict solely on the evidence admitted and a commitment to put aside any preconceptions that may have been gleaned from prior media exposure. A proper *voir dire* which focuses upon that aspect of a juror's psychology could not reasonably be calculated to embarrass a juror or any media representative who might be there. In light of the purpose of a *voir dire*, that is, to select jurors who will make an impartial decision upon the basis of the evidence presented to them, the considerations which impelled the judge to close the trial were irrelevant.

■

The trial judge, in his initial statement to Attorney Flaherty immediately after the *voir dire*, however, did present another and indeed more reasonable subject of concern. Judge Fiedler stated that he wished to sequester those panel members who had previous media exposure to information about the alleged crime from those panel members who stated they did not have any media exposure. This was an appropriate concern, but to close the courtroom to the general public to accomplish this insulation of some of the prospective jurors was inappropriate and unnecessary. Those jurors who stated they had not been exposed to any media coverage of the event could have been asked to retire and those jurors who had been subject to media influence could have been examined in public out of the presence of the balance of the panel. Contamination could have been avoided with-

out suppressing the public's right under sec. 757.14, Stats., to know what the court was doing.

We accordingly conclude, given the legislative presumption of an open courtroom, that there was nothing revealed in any of the statements of Judge Fiedler which should have reasonably in the exercise of discretion impelled him to hold an *in camera* examination of any of the prospective jurors. Had the reasons set forth by Judge Fiedler in his post-hoc affidavit been timely made prior to the closure of the courtroom—as henceforth this court will require—we would conclude that they demonstrated a failure to exercise appropriate discretion in determining that the *voir dire* be conducted *in camera*.

Moreover, we are satisfied that, had Judge Fiedler been apprised of the obligation to carefully articulate his reasons for closing the sitting of the court prior to so doing, as an experienced, careful, and able judge, he would have immediately been aware that the factual underpinnings and the rationale to support the closing of the courtroom were insufficient. We believe the methodology we prescribe herein is calculated to assist trial judges in the proper exercise of discretion and to forestall the possibility of reversal when discretion is exercised in accordance with properly found facts and a carefully stated rationale.

An additional question remains: Whether at this time, a year and a half after the *voir dire,* this court should direct the trial court to furnish a transcript of the *in camera* proceedings. We conclude that, despite the lapse of time, the transcript must be produced upon application of the petitioners. The *voir dire* examination of the jurors was conducted in secret. Under our law, as declared here today, that examination, in the absence of a carefully detailed exercise of discretion, was required to be in public. While we cannot by our mandate make

public the examination that was held covertly in the judge's chambers, we can make the substance—the verbatim exchange of questions and answers and the comments of the judge—available for all to scrutinize. While there indeed may have been no likelihood that hardship would be inflicted upon the petitioners were the transcript withheld, it is clear that the purpose of sec. 757.14, Stats., transcends the right of a newspaper or its reporter to have access to a courtroom. The purpose of the statute is to protect the right of the people to an open and responsible government. In light of this purpose, we conclude that the petitioners need not show special harm or the likelihood of hardship. The statute is one directed to this court's responsibility for the administration of justice. Accordingly, in the exercise of our constitutional supervisory power over courts, we order that the transcript be produced upon application to the court.[7]

What the La Crosse Tribune and its reporter had was the right—the same right that the public had—to be present at a public *voir dire* of the particular members of the panel. This they were denied, and that right cannot at this time be given them by this court by the production of the transcript. We trust, however, that by this opinion, by setting forth some guidelines under which a trial court may consider whether or not to close a courtroom, the public and news persons, as members of the public, will not be denied the right of access to the court for other than the most weighty and overwhelming reasons. We emphasize that the presumption under the statute is clear—that courts at all sittings thereof are to be open to the public and may be closed only when, in the exercise of discretion, the trial court determines, after hearing and the making of explicit findings, that

---

[7] Secs. 757.57 and 814.69(2), Stats.; SCR 71.03.

overwhelming public values connected with the administration of justice will be subverted by public trial. The failure to expressly exercise discretion on the basis of findings of fact will be deemed an abuse of discretion. Findings of fact are to be made only after an opportunity is given to the parties and to the public to be heard. The hearing may be a brief one or it may be extensive. For example, in a situation such as that posed in *Ampco,* where the very nature of the problem—the revelation of trade secrets were the trial to be kept open—is so self-evident that the mere stating of the proposition and the agreement upon that fact would constitute a sufficient hearing upon which to base a finding that the very purpose of the action would be defeated by a public trial. In some cases the hearing could be a protracted one. Although in the instant case we address only the statutory right, the right of public access to the courts is not a right to be taken lightly; and, accordingly, the closing of the court to the general public should be made deliberately and rationally and in a manner that the propriety of the exercise of discretion can be reviewed by an appellate court. It would appear that the great virtue in our Anglo-American court system is that it is open to the public so that all will know that the courts, as instruments of government, are defending the rights of the people and are not suppressing them. Thus it will be rare indeed when a trial judge can appropriately and in the exercise of discretion conclude that the quest for justice will be better served by secrecy than by public disclosure.

*By the Court.*—The order of the court of appeals is reversed.