STATE EX REL. WISCONSIN STATE
JOURNAL, Robert Spiegel, Editor of the
Wisconsin State Journal and Anita Clark,
Petitioners,

v.

CIRCUIT COURT FOR DANE COUNTY,
BRANCH 2, the Hon. Michael B. Torphy,
Presiding; State of Wisconsin; and Roger L.
Engroff, Respondents.

Court of Appeals

*Nos. 86–0074–W, 86–0075–W. Submitted on petition
January 13, 1986.—Decided April 24, 1986.*

(Also reported in 389 N.W.2d 73.)

516

For the petitioners the cause was submitted on the briefs of *Michael P. May* and *Joanne E. Brown* and *Boardman, Suhr, Curry & Field* of Madison.

For the respondent State of Wisconsin the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Thomas J. Balistreri,* assistant attorney general.

For the respondent Roger L. Engroff the cause was submitted on the brief of *Kenneth P. Casey* and *Deborah M. Smith,* assistant state public defenders.

Before Gartzke, P.J., Dykman and Eich, JJ.

EICH, J.   Petitioners, the *Wisconsin State Journal,* and its editor and reporter, request supervisory writs under sec. 809.51, Stats., prohibiting the Circuit Court for Dane County, the Hon. Michael B. Torphy presiding, from closing Roger Engroff's reexamination hearing. The issue is whether sec. 51.20(12), Stats., unequivocally requires the court to close the hearing on Engroff's motion. We conclude that the statute does not mandate closure and therefore grant the writ.

In 1981 Engroff was charged with first-degree sexual assault in violation of sec. 940.225(1)(d), Stats. He was found not guilty by reason of mental disease or defect and was committed to the Department of Health and Social Services. On April 19, 1985, Engroff filed a petition for reexamination to determine whether he could be safely discharged or released without danger to himself or others. Reexamination hearings are conducted under the procedures set forth in sec. 51.20, Stats. Engroff moved that the hearing be closed pursuant to sec. 51.20(12) which provides:

> Every hearing which is held under this section shall be open, unless the subject individual or the individual's attorney, acting with the individual's consent, moves that it be closed. If the hearing is closed, only persons in interest . . . may be present. If the subject individual is a minor, every hearing shall be closed unless an open hearing is demanded by the minor through his or her counsel.

The trial court ordered the hearing closed, interpreting the statute as unequivocally requiring closure if the defendant so requests. The *Journal* does not dispute the court's authority to close a reexamination hearing when compelling reasons are present. It argues, however, that the trial court's interpretation of sec. 51.20(12), Stats., is erroneous.

Engroff, arguing for closure, contends that the mandate of sec. 51.20(12), Stats., is clear: if a motion is filed, the hearing must be closed. He maintains that adherence to the "plain meaning rule" requires us to deny the petition without considering the history and purpose of the statute. We disagree. We are satisfied that the statute is ambiguous.

■
Ambiguity arises when more than one reasonable meaning can be assigned to a statutory phrase. *West Allis School Dist. v. DILHR,* 116 Wis. 2d 410, 418–19, 342 N.W.2d 415, 420 (1984). Two reasonable meanings can attach to the first sentence of sec. 51.20(12), Stats. As the trial court concluded, it could mean that whenever the individual moves to close the hearing, it must be closed—that no more is required than the filing of the motion. On the other hand, the ordinary legal meaning of the word "move" is "to make an application to a court." *Black's Law Dictionary,* 914 (5th ed. 1979); *see also Webster's New Collegiate Dictionary,* 753 (1977). In this sense, the sentence could, as the *Journal* contends, be read as contemplating an application for closure and a decision by the court on the application.

■
If a statute is ambiguous, we may look beyond its terms to determine its meaning:

> [We] look to its history, to all the circumstances intended to be dealt with, to the evils to be remedied, to its reason and spirit, to every part of the enactment, and may reject words, or read words in place which seem to be there by necessary or reasonable inference, and substitute the right word for one clearly wrong, and so find the real legislative intent, although it is out of harmony with or even contradicts the letter of the enactment.

*Green Bay Drop Forge Co. v. Industrial Comm.,* 265 Wis. 38, 49, 60 N.W.2d 409, 414 (1953), citing *Connell v. Luck,* 264 Wis. 282, 285, 58 N.W.2d 633, 634 (1953). We are also guided by the rule that each part of the statute should be construed in connection with every other part to produce a harmonious whole, *Milwaukee*

*County v. ILHR Dept.,* 80 Wis. 2d 445, 454 n.14, 259 N.W.2d 118, 123 (1977), and that words in the statute may take on meaning from others with which they are associated. *Lewis Realty v. Wisconsin R.E. Brokers' Board,* 6 Wis. 2d 99, 108, 94 N.W.2d 238, 243 (1959).

A preceding subsection of sec. 51.20, Stats., requires all hearings under ch. 51 to conform to the essentials of due process, "including the right to an open hearing [and] the right to *request* a closed hearing." (Emphasis added.) Sec. 51.20(5). to "request" is to "move," and, considering the statute as a whole, we conclude that hearings under sec. 51.20(12) shall be open unless the defendant moves that they be closed and the trial court, applying appropriate legal and procedural standards, grants that request. This interpretation is consistent with the legislative history of the statute.

Prior to 1975, reexamination hearings were presumptively closed to the public; they were "open only to persons in interest." Secs. 51.02(2) and 51.11(4), Stats. (1973). The language here under consideration was added to sec. 51.20 by ch. 430, Laws of 1975. In its original bill form 1975 A.B. 787,[1] the act provided: "Every hearing . . . shall be open, unless the individual . . . or his attorney moves that it be closed, *in which case* only persons in interest . . . may be present." (Em-

---

[1] Section 51.20(12), Stats., is substantially the same as that enacted by ch. 430, Laws of 1975, which began as Assembly Bill 7 in the June 1976 Special Session of the legislature. That bill was based on Assembly Substitute Amendment 2, to 1975 A.B. 787 which was adopted by the assembly but failed to pass the senate. It was approved by both houses when it reappeared as A.B. 7 in the special session.

phasis added.) The presence of the underscored phrase could lead a reasonably well-informed reader to conclude that once the motion is made, the hearing is closed, *ipso facto*. Its absence in the final version of the bill lends substantial credence to the *Journal's* argument that the legislature did not intend the statute as enacted to provide for "automatic" closure. We note, too, that the legislature included a specific provision for closing hearings involving minors: "If the . . . individual is a minor, every hearing shall be closed unless an open hearing is demanded by the minor."

Since hearings were presumptively closed prior to the 1975 enactments, it is apparent that the legislature intended to change the pre-1975 presumption favoring closed hearings when it adopted sec. 51.20(12), Stats., in its final form. In so doing, it rejected a specific bill draft which would have weakened that resolve. Finally, when it wanted to presume closure—as in cases involving minors—it did so in express terms. Engroff's interpretation of sec. 51.20(12) would return the law to its pre-1975 state, wholly disregarding the intent of the legislature.

Our view of the statute is also consistent with Wisconsin's historic commitment to open trials. While the principle is not without limitation, "[t]he importance we as a Nation attach to the public trial is reflected both in its deep roots in the English common law and in its seemingly universal recognition in this country since the earliest times." *Gannett Co. v. DePasquale*, 443 U.S. 368, 414 (1979) (Blackmun, J., concurring in part and dissenting in part). The public trial is rooted in the principle that justice cannot survive behind walls of silence, and its valued place in our jurisprudence reflects the traditional Anglo-American distrust

of secret trials. *Sheppard v. Maxwell,* 384 U.S. 333, 349 (1966); *In Re Oliver,* 333 U.S. 257, 268–70 (1948).

These principles find expression in sec. 757.14, Stats., which guarantees that "[t]he sittings of every court shall be public and every citizen may freely attend the same." The statute is not absolute, however. Its mandate is more appropriately described as a presumption of openness, for "it has long been recognized that the requirement for public trials is subject to certain inherent powers of the court to limit the public nature of trials . . . where the administration of justice requires it." *State ex rel. Ampco Metal v. O'Neill,* 273 Wis. 530, 536, 78 N.W.2d 921, 925 (1956). But the circumstances justifying closure must be unusually compelling. A courtroom should be closed only when not to do so would defeat the very purpose of the proceedings or would subvert the "overwhelming public values connected with the administration of justice." *State ex rel. La Crosse Tribune v. Circuit Ct.,* 115 Wis. 2d 220, 241–42, 340 N.W.2d 460, 470 (1983).

When, in the exercise of its inherent powers, or its power under sec. 51.20(12), Stats., a court acts to close the doors of the courtroom, it must first hold a hearing on the question of closure and "publicly reach a conclusion based on the exercise of discretion." *Id.* at 237, 340 N.W.2d at 468.

> The trial judge should recite on the record the factors that impel him to close the courtroom and why such factors override the presumptive value of a public trial. The findings of fact must be made with specificity. The process must be a rational one, and the rationality of it must be demonstrated on the

record, showing that the conclusion was reached on facts of record or which are reasonably derived by inference from the record. Upon review an appellate court should be able to determine from the record whether discretion was in fact exercised and whether a reasonable judicial mind could have reached the conclusion it did. *Id.* at 236–37, 340 N.W.2d at 468.

Jeremy Bentham wrote more than a century and a half ago that the public trial is " 'the most effectual safeguard of testimony, and of the decisions depending on it; it is the soul of justice; it ought to be extended to every part of the procedure, and to all causes.' " *Gannett Co.,* 443 U.S. at 422, quoting J. Bentham, *A Treatise on Judicial Evidence,* 67 (1825). The Wisconsin Supreme Court paraphrased Bentham in *La Crosse Tribune,* when it noted that "the great virtue in our Anglo-American court system is that it is open to the public so that all will know that the courts, as instruments of government, are defending the rights of people and not suppressing them." *Id.* at 242, 340 N.W.2d at 470.

Section 51.20(12), Stats., read in light of its legislative history and the strong statutory presumption favoring public trials, requires more than a simple request in order to close a reexamination hearing. It requires the trial court to exercise its discretion under the guidelines set forth in *La Crosse Tribune* and *McCleary v. State,* 49 Wis. 2d 263, 182 N.W.2d 512 (1971). Because the trial court, proceeding on an erroneous view of the statute, did not hold a hearing on the question of closure, it abused its discretion. We grant the

writs and remand for further proceedings consistent with this opinion.[2]

*By the Court.*—Writs granted and cause remanded with directions.

---

[2] Because this case may be decided upon our construction of secs. 51.20(5) and (12) and 757.14, Stats., we need not reach the constitutional question of whether the First Amendment requirement of open "criminal trials" applies to a reexamination hearing. *State v. State Fair Park, Inc.,* 21 Wis. 2d 451, 453–54, 124 N.W.2d 612, 613 (1963).