STATE of Wisconsin EX REL. STORER
BROADCASTING COMPANY and WISN-TV,
WISN Radio and WBTT Radio, Divisions of The
Hearst Corporation, Petitioners,

v.

The Honorable Ralph G. GORENSTEIN, Circuit
Judge of Milwaukee County, Branch 25; E.
Michael McCann and Terrance B. Davis,
Respondents. [Case Nos. 85–1985–W, 85–1986–
W.]

STATE of Wisconsin EX REL. NEWSPAPERS,
INC., a Wisconsin corporation, publisher of *The
Milwaukee Journal,* and Dave Hendrickson,
Petitioners,

v.

CIRCUIT COURT OF MILWAUKEE COUNTY,
BRANCH 25, the Honorable Ralph G.
Gorenstein, presiding, the State of Wisconsin
and Terrance B. Davis, Respondents. [Case No.
85–1994–W.]

Court of Appeals

*Nos. 85–1985–W, 85–1986–W, 85–1994–W. Submitted on
briefs December 6, 1985.—Decided March 11, 1986.*

(Also reported in 388 N.W.2d 633.)

For the petitioners Newspapers, Inc. and Dave Hendrickson the cause was submitted on the briefs of *Meissner, Tierney, Ehlinger & Whipp, S.C.* by *Dennis L. Fisher* and *Susan J. Marguet,* of Milwaukee.

For the petitioner Storer Broadcasting Company the cause was submitted on the briefs of *Foley & Lardner* by *Robert A. Christensen* and *David Lucey,* of Milwaukee; for the petitioners WISN-TV, WISN Radio and WBTT Radio the cause was submitted on the briefs of *Quarles & Brady* by *Michael H. Schallman* and *Ralph A. Weber,* of Milwaukee. [This was a joint brief.]

For the respondent Ralph G. Gorenstein the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, with *David T. Flanagan,* assistant attorney general of counsel, of Madison.

For the respondent Terrance B. Davis the cause was submitted on the briefs of *Waring R. Fincke,* assistant state public defender, of Milwaukee.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

MOSER, P.J.   This is an original action in the court of appeals seeking a supervisory writ pursuant to Rule 809.51, Stats., directed to the circuit court for Milwaukee county, the Honorable Ralph G. Gorenstein, presiding. Petitioners, representatives of the print and electronic media (the media), request an alternative writ of mandamus or prohibition to require

Judge Gorenstein to conduct the entire *voir dire* in public in the proceeding entitled *State of Wisconsin v. Terrance Bernard Davis,* criminal division case no. L–1463, or to prohibit Judge Gorenstein from closing parts of the *voir dire* in that case from members of the press and public.

We hold that the trial court gave no substantial, compelling reason to warrant closure of *voir dire.* The trial court also failed to hold an adequate hearing on the closure issue and, thus, abused its discretion in ordering closure. Because mandamus does not lie to compel a discretionary act, we deny the issuance of this writ. We grant the petition for a supervisory writ of prohibition.[1]

This matter arose when Terrance Bernard Davis (Davis) was accused of killing two Milwaukee police officers. Because of the intense publicity generated by the media over the killing of the policemen, Davis' arrest and alleged confession, and the details surrounding the crime, the defense was concerned that Davis might not receive a fair trial. The defense thus moved for an order allowing individual *voir dire* of each prospective juror out of the hearing of the rest of the panel. The particular issues on which the defense wished to *voir dire* panel members were racial prejudice[2] and opinions formed on the basis of pretrial publicity.

The trial court refused to permit individual questioning of *all* venire persons, but allowed the defense to examine several prospective jurors in chambers

---

[1] We do so under our supervisory authority. *See* Wis. Const. art. VII, § 5; secs. 752.01(2) and (3), and 752.02, Stats.

[2] Davis is black; the two slain policemen were white.

without the media present. The only jurors so examined were those who had first requested this procedure in open court. The court allowed such examination on three subjects only: racial prejudice, pretrial publicity, and subjects which prospective jurors were reticent about discussing in public.

The trial court reached the conclusion that partially closed *voir dire* was necessary to protect Davis' right to a fair trial. It did so without holding a formal hearing, taking any evidence, or making any findings of fact. The court considered some alternatives to closure, such as installing a remote audio link to chambers, providing an edited transcript of the in-chambers proceedings, and appointing a media representative to attend the proceedings, provided that the court was allowed to edit the final article. These alternatives were rejected by the media.

Initially, we consider the petitioners' methods of obtaining review of the court's ruling. Petitioners seek an alternative writ of mandamus or prohibition. Mandamus is appropriate to compel a trial court to take a specific action, but only if the trial court's duty is clear.[3] Mandamus is not available when the action sought to be compelled is discretionary.[4] Because the trial court's decision to close *voir dire* is discretionary,[5]

---

[3] *Gross v. Midwest Speedways, Inc.,* 81 Wis. 2d 129, 135–36, 260 N.W.2d 36, 39 (1977).

[4] *State ex rel. Althouse v. City of Madison,* 79 Wis. 2d 97, 106, 255 N.W.2d 449, 453 (1977).

[5] *State ex rel. La Crosse Tribune v. Circuit Court,* 115 Wis. 2d 220, 233, 340 N.W.2d 460, 466 (1983).

we conclude that mandamus is improper in this case. The petition for a writ of mandamus therefore is denied.

We hold, however, that prohibition clearly is proper in this case. Prohibition is a proper means of correcting trial court error when an appeal will come too late for effective redress.[6] Here, petitioners' appeal comes after the *voir dire* has concluded. We thus grant a writ of prohibition.

We also note that this appeal is moot, for our decision can have no practical effect upon an existing controversy.[7] In the interest of judicial economy and as guidance to this circuit court,[8] however, we consider whether the trial court abused its discretion in ordering the individual, sequestered *voir dire* of selected jurors on the issues of pretrial publicity, racial prejudice, and embarrassing subjects.

It is clear that a trial court judge, in his or her discretion, may close the sitting of a court.[9] *Voir dire* of a jury panel, although a pretrial proceeding, has been held to be a sitting of the court.[10] For a trial court to order closure, however, the reasons must be compel-

---

[6] *State ex rel. Arnold v. County Court,* 51 Wis. 2d 434, 437, 187 N.W.2d 354, 356 (1971).

[7] *See La Crosse Tribune, supra* note 5, at 228, 340 N.W.2d at 464 (citation omitted).

[8] *See id.* at 228–29, 340 N.W.2d at 464 (exceptions to mootness doctrine include situations where trial courts need guidance).

[9] *Id.* at 233, 340 N.W.2d at 466.

[10] *Id.* at 232, 340 N.W.2d at 466.

ling,[11] substantial,[12] and "weighty and overwhelming."[13] Such reasons must be sufficient to overcome the presumption that a jury *voir dire* will be open to the public.[14]

Our supreme court has mandated that the trial court must follow a particular procedure in exercising its discretion to close a jury *voir dire*.

> The trial judge should recite on the record the factors that impel him to close the courtroom and why such factors override the presumptive value of a public trial. The findings of fact must be made with specificity. The process must be a rational one, and the rationality of it must be demonstrated on the record, showing that *the conclusion was reached on facts of record or which are reasonably derived by inference from the record.* Upon review an appellate court should be able to determine from the record whether discretion was in fact exercised and whether a reasonable judicial mind could have reached the conclusion it did. *A trial court is required to hold a hearing* and publicly reach a conclusion based on the exercise of discretion *prior to ordering a closing.* The parties, and members of the public present in court, may appear at such hearing.[15] [Emphasis added.]

---

[11] *Id.* at 235, 340 N.W.2d at 467.

[12] *Id.* at 236, 340 N.W.2d at 467.

[13] *Id.* at 241, 340 N.W.2d at 470.

[14] *Id.* at 233, 340 N.W.2d at 466.

[15] *Id.* at 236–37, 340 N.W.2d at 468.

We note that if a trial court fails to conduct a hearing, that in itself is an abuse of discretion.[16]

Here, the trial court initially ordered that panel members who had been exposed to pretrial publicity about the *Davis* case would be questioned in chambers as to what they had heard and whether, despite their knowledge of the case, they could remain impartial. The court's decision came on October 21, 1985. No hearing was held that day prior to the closure order.

On October 22, after reviewing pertinent case law but again without holding a hearing or allowing argument by counsel for the media, the trial court decided to uphold the previous day's limited closure order to protect Davis' right to a fair trial. The court reiterated that it was allowing the defense to conduct sequestered *voir dire* of individual panel members on the limited subjects of pretrial publicity, racial bias, and other "embarrassing" subjects. The court recited that it had "explored alternatives" to closure. The court then admonished one of the media's counsel for his "untoward and contemptuous" conduct in attempting to be heard on the closure, and threatened him with contempt.

We hold that the trial court abused its discretion in ordering closure of the *voir dire*. The court never held a hearing and never made the findings of fact required to support its exercise of discretion. Our supreme court has recently stated that "[t]he conclusion that factors weighing in favor of closure are present must be based on articulable facts known to the court *rather than [on] unsupported hypotheses or conjec-*

[16] *Id.* at 237, 340 N.W.2d at 468.

*ture.*[17] Moreover, "[f]indings of fact are to be made only after an opportunity is given to the parties and to the public to be heard."[18] The trial court based its closure order on the "fact" that Davis could not otherwise get a fair trial. While this may be a valid reason for ordering closure,[19] it was insufficient here. The trial court merely speculated that Davis could not receive a fair trial if *voir dire* were not partially sequestered. The court refused to take testimony on the effect of pretrial publicity on Davis' case, even though two defense experts stood ready to testify on that particular subject.

The trial court's closure order was too severe a remedy here. Its concern with the venire's exposure to pretrial publicity was appropriate,

> but to close the courtroom to the general public to accomplish this insulation of some of the prospective jurors was inappropriate and unnecessary. Those jurors who stated they had not been exposed to any media coverage of the event could have been asked to retire and those jurors who had been subject to media influence could have been examined in public out of the presence of the balance of the panel.[20]

Thus, it is apparent that an easy alternative to closure was available to this trial court: instead of moving prospective jurors in and out of chambers, the court could have simply moved the rest of the panel out of

---

[17] *State ex rel. Newspapers, Inc. v. Circuit Court,* 124 Wis. 2d 499, 508, 370 N.W.2d 209, 214 (1985) (emphasis added).

[18] *La Crosse Tribune, supra* note 5, at 242, 340 N.W.2d at 470.

[19] *See id.* at 235–36, 340 N.W.2d at 467.

[20] *Id.* at 239, 340 N.W.2d at 469.

the courtroom and examined individual jurors in open court. In that manner, "[c]ontamination could have been avoided without suppressing the public's right under sec. 757.14, Stats., to know what the court was doing."[21]

Finally, we must comment on the trial court's attitude toward the closure issue. At several points, the court commented to the media that:

> [W]hat are you really interested [in] or worried about, your rights being eroded or are you actually going to report what is going to go on [in the *voir dire*] as newsworthy? . . . I think this is . . . a bit of a knee-jerk reaction, [you are] worried more about the right of access than really any newsworth[i]ness of anything that is going on. . . . I frankly think you are making a mountain out of a molehill . . . .

Our supreme court has stated that "the right of public access to the courts is not a right to be taken lightly."[22] The purpose of sec. 757.14, Stats., is to protect the right of the people to an open and responsible government.[23] It is true that the media have no special right in this regard.[24] As representatives of the public, however, the media have the right to public access to

---

[21] *Id.* at 239–40, 340 N.W.2d at 469. We also note that our supreme court has rejected "embarrassment" of prospective jurors about being questioned in open court as a factor compelling closure. *Id.* at 238–39, 340 N.W.2d at 469.

[22] *Id.* at 242, 340 N.W.2d at 470.

[23] *Id.* at 241, 340 N.W.2d at 470.

[24] *Id.* at 237, 241, 340 N.W.2d at 468.

the courts. It is irrelevant that, as the court stated, "[t]here hasn't been any group that has rushed forward with [the media's] tenacity . . . on behalf of the public." The right of public access exists for the public, of which the media are a part. The trial court was mistaken in treating this matter lightly.

Upon the foregoing reasons, we deny the petitioners' request for a writ of mandamus and grant their petition for a writ of prohibition against the trial court.

*By the Court.*—Petition for alternative writ of mandamus denied. Petition for alternative writ of prohibition granted.