COMMITTEE ON PROFESSIONAL
ETHICS AND CONDUCT OF THE
IOWA STATE BAR ASSOCIATION,
Complainant,

v.

Joseph R. LAPOINTE, Respondent.

No. 87–1136.

Supreme Court of Iowa.

Nov. 25, 1987.

James E. Gritzner and Kasey W. Kincaid of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for complainant.

James P. McGuire of McGuire & O'Bryan, Mason City, for respondent.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, LAVORATO, and NEUMAN, JJ.

LAVORATO, Justice.

After a bench trial, the district court found attorney Joseph R. Lapointe guilty of assault, a serious misdemeanor, and tampering with a witness, an aggravated misdemeanor. The two convictions resulted in a temporary suspension of Lapointe's license to practice law on December 19, 1986, and later led to this disciplinary proceeding.

The Grievance Commission found that Lapointe violated Iowa Code of Professional Responsibility for Lawyers DR 1–102(A)(1) (violating disciplinary rule), (5) (engaging in conduct prejudicial to the administration of justice), (6) (engaging in any other conduct adversely reflecting on his fitness to practice law), and EC 1–5 (failing to refrain from all illegal and morally reprehensible conduct). The commission recommended a one-year suspension "with credit given for the time that his license has been suspended."

Lapointe is a sole practitioner who has been practicing law in Mason City since his admission to the bar in 1978. He has a general law practice with approximately twenty percent of his work devoted to criminal defense.

For several years leading up to the events triggering the filing of criminal charges against Lapointe, he had been intimately involved with Ramona Nava. On the evening of February 21, 1986, the couple attended a county bar association party. After several hours of heavy drinking by Lapointe, the two left the party for Lapointe's home. There, Ramona found a match book cover with a woman's name and telephone number written inside. The discovery led to an argument during which Lapointe struck Ramona in the stomach and face. The blow to the face resulted in a cut above Ramona's eye.

Ramona refused Lapointe's offer to take her to the hospital. Instead, she left and proceeded to a bar the couple frequented. From there, a friend and bar maid drove Ramona to the hospital where she received six stitches in the cut. The three then returned to the bar, where two police officers on routine patrol saw Ramona's condition and interviewed her. Later, she signed a statement about the incident at the police station.

The next afternoon Lapointe telephoned Ramona inquiring about her condition. During the course of the conversation, Lapointe asked whether she would file criminal charges. Ramona said she would not but neglected to tell him she had been interviewed by the police. Lapointe also offered to pay whatever damages upon which the two could agree, suggesting that he would either borrow the money or make monthly payments. He suggested that she contact a lawyer for advice as to the amount of any settlement. Later that evening, Lapointe learned from people at the bar that Ramona had been interviewed there by the police.

Several weeks later, the couple reconciled and resumed their relationship. In the weeks that followed, the two talked frequently about the events of February 21. In the meantime, a criminal complaint charging aggravated assault and false imprisonment was filed against Lapointe.

In the latter part of April, Lapointe learned of an impending grand jury proceeding concerning the pending complaint. Before the grand jury convened, Lapointe saw statements Ramona had given to the county attorney. Lapointe felt that the statements cast him in a bad light and concluded that the statements were prompting the authorities to take a "hard line attitude" against him. Lapointe confronted Ramona about these statements. She expressed regret and told Lapointe she had said many of the things in an effort to get back at him for what he had done.

After several conversations with Ramona about these statements and her upcoming grand jury testimony, Lapointe prepared a two-page document carrying the heading "Mona, these are the most important things to remember." He insists the document is true and was prepared at Ramona's request to help her remember her testimony before the grand jury. Lapointe prepared and gave the document to Ramona several days prior to her appearance before the grand jury.

The document suggests Ramona give testimony that the blows were struck in self-defense. Such testimony would nullify the false imprisonment charge, which was based on Ramona's statements to the authorities that Lapointe had locked her in his home shortly before she was assaulted. In one part of the document, Lapointe emphasizes that Ramona should make it clear to the grand jury that his offer of money was in no way conditioned on her refusal to press charges or testify. In another part of the document, Lapointe urges Ramona to tell the grand jury that in her previous statements to the authorities she "exaggerated and stretched the truth." Toward the end of the document, Lapointe suggests that Ramona should stress the good things that have happened to her because of their relationship and should leave the grand jury with the impression that despite what has happened, they love each other and plan to live their lives together.

Ramona ultimately testified before the grand jury, which returned a four-count indictment against Lapointe. The case was tried without a jury with Ramona as the State's main witness. The court found Lapointe guilty of assault causing bodily injury, in violation of Iowa Code section 708.-2(2) (1985), and tampering with a witness, in violation of Iowa Code section 720.4. Lapointe received a thirty-day sentence and actually spent twenty-six days in jail. He appealed the tampering conviction but not the assault conviction, and his appeal is pending.

It is not surprising that Lapointe readily admits the assault. However, he vigorously denies he is guilty of tampering. Regardless of the outcome of the tampering appeal, he concedes, as he must, that the commission may consider all of his actions in determining his fitness to practice law. *See Committee on Professional Ethics & Conduct v. Kraschel*, 260 Iowa 187, 198–99, 148 N.W.2d 621, 628 (1967) (" 'Acquittal of a member of the bar following trial of a criminal indictment is not res judicata in a subsequent disciplinary proceeding based on substantially the same charge or conduct. Not only are the parties different but the purposes of the two proceedings are different.' ") (quoting *In re Pennica*, 36 N.J. 401, 418, 177 A.2d 721, 730 (1962)); Annotation, *Effect of Acquittal or Dismissal in Criminal Prosecution as Barring Disciplinary Action Against Attorney*, 76 A.L.R.3d 1028 (1977).

Despite Lapointe's characterization of his assault as a "crime of passion, a brief and sudden episode without any premeditation or time for reflecting," we agree with the commission that such conduct violated DR 1–102(A)(1), (5), (6), and EC 1–5. The conduct was, without question, illegal because a criminal law was admittedly violated. *See EC 1–5.* It could also be described as "morally reprehensible." *See id.* Notwithstanding the relaxed mores of contemporary society, no one can seriously contend that our community tolerates such conduct. *See Committee on Professional Ethics & Conduct v. Patterson*, 369 N.W.2d 798, 801 (Iowa 1985) (three-month suspension for as-saultive behavior considered morally reprehensible in violation of EC 1–5).

Because Lapointe's assaultive behavior was illegal and morally reprehensible, it necessarily reflects on his fitness to practice law. *See* DR 1–102(A)(6). It likewise reflects prejudicially on the administration of justice. *See* DR 1–102(A)(5). We are convinced that "when those licensed to operate the law's machinery knowingly violate essential criminal statutes, there inexorably follows an intensified loss of lay persons' respect for the law." *Patterson*, 369 N.W.2d at 801. A showing that DR 1–102(A)(5) and (6), disciplinary rules, were violated necessarily establishes violation of DR 1–102(A)(1), which prohibits a violation of a disciplinary rule.

The question whether Lapointe's actions following the assault constitute unethical conduct presents a closer question. Admittedly, in many conversations, Lapointe discussed with Ramona the facts in relation to the criminal charges against him and prepared, for her use before the grand jury, the ill-advised "refresher" document. We express no opinion whether such conduct constitutes a criminal violation of our witness tampering statute. Nevertheless, after our careful review of the record, we are convinced the commission was correct in concluding such conduct did violate DR 1–102(A)(1), (5), (6), and EC 1–5.

It is interesting to note that Lapointe, in answering the committee's request for admissions, admits these actions violated EC 1–5 but denies they violated DR 1–102(A)(1), (5), and (6). The commission certainly could rely on the admission in reaching its decision. *See Committee on Professional Ethics & Conduct v. Cody*, 412 N.W.2d 637, 638 (Iowa 1987); *see also* Iowa R.Civ.P. 127, 128.

Several facts support a reasonable inference that Lapointe intended to influence Ramona's testimony and minimize the chances that he would be indicted. These include Lapointe's expertise in the criminal area; his persistence in talking with Ramona about the criminal charges while at the same time offering her restitution; and his self-serving statements in the document,

which were clearly designed to destroy Ramona's credibility and to dilute, if not completely meet, the charges against him. Such attempts by Lapointe to influence a witness to "assist in chilling or hindering [his] prosecution," *Committee on Professional Ethics & Conduct v. Halleck*, 325 N.W.2d 117, 118 (Iowa 1982), were clearly improper and, in our view, had a prejudicial impact on the administration of justice, in violation of DR 1–102(A)(5), and thus reflected adversely on his fitness to practice law, in violation of DR 1–102(A)(6). *See Halleck*, 325 N.W.2d at 118 (fourteen-month suspension for conviction of witness tampering in violation of DR 1–102(A)(1), (3), (4), (5), and (6)) ("The vice in this case was not in offering restitution but in using it as a leverage to attempt to influence the witness to assist in chilling or hindering the prosecution of respondent's client.").

Because we conclude Lapointe's conduct subsequent to the assault violated disciplinary rules, the same conduct also constitutes a violation of DR 1–102(A)(1), which we earlier said prohibits a violation of a disciplinary rule.

The commission found that Ramona deliberately set out to cause Lapointe difficulty with the authorities in an effort to "get even" with him. Although the record certainly supports the finding, her efforts do not excuse his unprofessional conduct. In short, he must be disciplined. Whatever sanction we do impose should be sufficient to deter others and to indicate to the public that "the courts will maintain the ethics of the profession." *Halleck*, 325 N.W.2d at 118.

We agree with the committee's recommendation that Lapointe's license to practice law should be suspended with credit given for the time his license has already been suspended; however, we are convinced the period of suspension should be not less than fourteen months rather than twelve as recommended by the committee. We therefore suspend Lapointe's license to practice law in the courts of this state indefinitely, with no possibility of reinstatement for a period of fourteen months from December 19, 1986. This suspension shall apply to all facets of the practice of law. *See* Iowa Sup.Ct.R. 118.12. Upon application for reinstatement, Lapointe shall have the burden to prove he has not practiced law during the period of suspension and that he meets the requirements of Iowa Supreme Court Rule 118.13. We caution Lapointe that any hearing on an application for reinstatement will be at least sixty days after the filing of such application. *See* Iowa Sup.Ct.R. 117. Costs are assessed to Lapointe pursuant to Supreme Court Rule 118.22.

LICENSE SUSPENDED.