IN the INTEREST OF PETER B., a child under the age of
18:

PETER B., Respondent-Petitioner,

v.

STATE of Wisconsin, Petitioner-Respondent. [Case No.
93–2654–LV.]

STATE of Wisconsin EX REL. PETER B., Petitioner,

v.

CIRCUIT COURT JUVENILE DIVISION FOR MILWAUKEE
COUNTY, BRANCH 42, the Honorable David Hansher,
Presiding and E. Michael Mc Cann, District Attorney
Milwaukee County, Respondents. [Case No.
93–2655–W.]

Court of Appeals

*Nos. 93–2654–LV, 93–2655–W. Submitted on briefs December
14, 1993.—Decided April 5, 1994.*

(Also reported in 516 N.W.2d 746.)

For the petitioner and the respondent-petitioner the cause was submitted on the briefs of *Assistant State Public Defender, Attorney for Petitioner* with *Ann E. Kenney* of Wauwatosa.

For the respondents the cause was submitted on the briefs of *James E. Doyle, Attorney General* with *Gregory M. Posner-Weber.*

For the petitioner-respondent the cause was submitted on the briefs of *E. Michael McCann, District Attorney Milwaukee County* with *Jonathan D. Stick* of Wauwatosa.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

SCHUDSON, J.   Peter B. petitioned this court for leave to appeal from a non-final order pursuant to RULE 809.50, STATS., or, in the alternative, for a supervisory writ under RULE 809.51, STATS., to order the Circuit Court of Milwaukee County, the Honorable David Hansher, circuit judge, not to authorize disclosure of Peter B.'s full name, address, date of birth, and photograph to local broadcast and print media. We dismiss Peter B.'s petition for leave to appeal pursuant to the Notice of Voluntary Dismissal Peter B. filed with this court. We deny Peter B.'s alternative petition for a writ of prohibition because we conclude that the juvenile court order for disclosure was a reasonable exercise of lawful authority under § 48.78(2)(a), STATS.

## I.  FACTUAL BACKGROUND

On March 17, 1993, Peter B., at that time thirteen and one-half years old, was adjudicated delinquent for possession of a dangerous weapon by a child, in viola-

tion of § 948.60(2), STATS.[1] The juvenile court ordered a period of probation supervision that included placement in a residential treatment center.

On July 30, 1993, Peter B.'s probation officer filed a "Petition For Extension & Revision of Dispositional Order And Change In Placement." The petition alleged that Peter B. was "no longer appropriate for placement with [the residential treatment center] as his behavior has been both verbally and physically aggressive toward Staff, he has been AWOL and is considered to be totally out of control . . . ." The petition recommended Peter B.'s change of placement to either the Ethan Allen School or the Lincoln Hills School, restrictive facilities under the Wisconsin Division of Youth Services. On August 25, 1993, when Peter B. did not appear in court for the hearing on the petition, the court commissioner issued a capias.[2]

On September 20, 1993, when Peter B. failed to appear before Judge Hansher for a previously scheduled review of his progress on supervision, the juvenile court ordered another capias. A few hours later, his case was recalled when the court learned that Peter B. had been taken into custody the preceding weekend. The court then ordered Peter B. placed in secure detention pending the hearing on the petition, scheduled for

---

[1] Section 948.60(2), STATS., in relevant part, provides: "Any child who possesses or goes armed with a dangerous weapon is guilty of a class A misdemeanor."

[2] The date is uncertain in the record. Although in their briefs the parties refer to Peter B.'s failure to appear at the August 25 hearing, the "Capias Request/Withdrawal Form" reflects a "capias issued" on August 23. The form, however, does not carry any signature of a commissioner or judge. In her brief to this court, counsel for Peter B. writes that the court commissioner "continued a capias for Peter B." on August 25.

October 5. On September 27, however, Peter B. absconded from "C-4 honors detention." According to the uncontroverted statement in the district attorney's brief, " 'C-4' is a less secure, though still locked, facility to which certain juveniles are transferred at the discretion of the secure detention facility staff to relieve overcrowding."[3]

When Peter B. failed to appear for the October 5 hearing, the assistant district attorney asked "that Peter B.'s name be released to the press." He argued:

> [I]t[']s my opinion based on the way he appeared to behave in court on the last date, the fact he ran away from C-4, and the fact he's been adjudicated delinquent on the possession of a dangerous weapon by a child charge that he presents a danger to the community.

Before the juvenile court, counsel for Peter B. initially did not explicitly challenge the court's authority to release his name. Rather, she emphasized that Peter B. had what she characterized as a relatively minor record, that the weapons charge "was something involving his family,"[4] and that he probably was at

---

[3] Learning of the transfer, the trial court expressed surprise and disapproval:

> They put him in C-4? . . . He was charged with possession of a dangerous weapon by a child. The record should reflect I raised my voice when I said that.
>
> . . . .
>
> It seems that every case I want to keep a youngster in detention, I have to say do not transfer to C-4. But I can't do it in every case. So he's in the community and here's someone who's pending [a change of placement petition on] a possession of a dangerous weapon by a child.

[4] Later in the hearing, the juvenile court noted that the weapon Peter B. possessed was a .22 caliber revolver.

home. She suggested, therefore, that the court "call the police or suggest to the police they should try there a little harder before you publish his name to the community."

After hearing further argument from the attorneys and a brief presentation from Peter B.'s probation officer, the court stated:

> We're not looking at this issue in a vacuum. We're looking at the issue based upon his previous record which I agree is not extensive, but there's [sic] previous delinquencies, his finding of delinquency on a possession of a dangerous weapon by a child, his placement at the . . . Residential Treatment Center where he didn't behave, caused disruptions, where he ran away, apprehended on a capias, placed in secure detention, and ran away again, escaped — he's an escapee, and you say it's not in his best interest to have his name disclosed? You're probably right. But the whole reason behind confidentiality for the juvenile is to protect him in future endeavors for him to get a job and save his family embarrassment. We follow that closely here. It's a good rule. But the reasons for nondisclosure basically have dissipated due to his conviction of this offense. And his escape or leaving the placement of the . . . Residential Treatment Center, and his escape from C-4, I think the public needs to be protected from individuals like this.
>
> . . . .
>
> I think what we have here is your invoking the cloak of confidentiality for the juvenile, but I think it's not an absolute privilege or an absolute right. I think it's conditional, and it's conditional, I find, based upon the reading of 48.01 which deals with the interests of the public. And I think there's a balancing test here where I balance the interest of the juvenile confidentiality verses [sic] the interest

of the public in apprehending someone who I consider to be dangerous.

And I'll find under 48.34 he is a danger to the public and needs to be apprehended.. . . And I find that the need for confidentiality is outweighed by the exigencies of the present circumstances.

. . .I am going to order that the juvenile's name and the fact that he is wanted on an apprehension warrant as an escapee from C-4 and could be considered dangerous be disclosed to the print and broadcast media. I find it's in the best interest of the administration of the Juvenile Justice System and of the public. I feel that or find that the juvenile by running away from the [Residential Treatment Center], escaping from a secure detention facility — I don't want to say waivers, but brings in consideration the interest of the public under 48.01(2). And I find due to his own action he has brought upon himself the disclosure of his name and the fact that he is wanted on an apprehension warrant.. . . The whole purpose of 48.01 is to rehabilitate the juvenile. We can't rehabilitate him unless we have him in court. And as the probation officer pointed out in her petition, the best interest of the juvenile is to place him in a secure detention facility. We can't do that or offer him any services unless we have him within our jurisdiction. And I know confidentiality is "the cornerstone of the Juvenile Court System." And this court has never disclosed juveniles' names and in fact have [sic] led the fight against the media releasing psychological reports or using psychological reports in their stories and court reports. But the stigma of releasing his name is far outweighed by the public interest in apprehending him immediately. And I find that this child by his own actions has brought about this court's action, and he has to bear full responsibility for this court order.. . .

In making this decision, I want to emphasize I'm giving paramount consideration to the juvenile's interest, but even by doing that, the need for the juvenile's immediate apprehension by the Milwaukee Police Department or Milwaukee County Sheriff's Department due to his escape from C-4 and the fact there's an underlying serious charge clearly outweighs the juvenile's interest in confidentiality.

The juvenile court's final Order For Disclosure Of Confidential Information provided:

It is hereby ordered that the name, address, birthdate, and any photograph available to the Clerk of Court's Office, Children's Court Center, the Department of Social Services or any law enforcement agency of the above-named juvenile are to be disclosed to local broadcast and print media because the juvenile failed to appear in court on October 5, 1993, for an Extension and Change of Placement Hearing following disposition on a charge of Possession Of A Dangerous Weapon By A Child, and further is an escapee from "C-4 honors detention."

The juvenile court then stayed its order for 72 hours to give Peter B.'s counsel time to seek review of the order. She did so. The acting motions judge of this court, *see* WIS. CT. APP. IOP VI (3) (Law. Coop. 1994), ordered a stay of the juvenile court order and further ordered the parties to submit briefs. Upon consideration of the briefs, this court vacated the earlier stay. Peter B.'s counsel then moved this court for re-imposition of the stay, and we denied that motion. The juvenile court order then was implemented, resulting in the publication of Peter B.'s name, photograph, and other information on television and in newspapers.

## II.  VOLUNTARY DISMISSAL

Following disclosure of Peter B.'s identity through the media, his counsel filed a Notice of Voluntary Dismissal with this court, seeking to dismiss and withdraw the petition for leave to appeal the non-final order and the petition for a supervisory writ, pursuant to RULE 809.18, STATS. RULE 809.18 provides:

> An appellant may dismiss an appeal by filing a notice of dismissal. The notice must be filed in the court . . . . The dismissal of an appeal does not affect the status of a cross-appeal or the right of a respondent to file a cross-appeal.

The attorney general, on behalf of the juvenile court, does not oppose dismissal of Peter B.'s petition for leave to appeal. The attorney general, however, does oppose dismissal of the petition for a writ, arguing that RULE 809.18, STATS., does not apply because "[a] supervisory writ proceeding in the court of appeals is not an *appeal* for purposes of Rule (sec.) 809.18, STATS." (Emphasis in original.) The attorney general asks this court to retain jurisdiction in order to address "an issue of substantial and continuing interest not only to juvenile court judges and litigators, but also to the general public." The attorney general also argues that "[g]iven the steadily increasing number of juvenile offenders, . . . it is virtually certain that the judges will be faced with the question of whether to disclose the identities of these children [who will run away from placement and service providers] to the media in an effort to facilitate their return and their rehabilitation."

We agree. Although we dismiss the petition for leave to appeal pursuant to RULE 809.18, STATS., we conclude that the voluntary dismissal rule does not command our dismissal of Peter B.'s petition for a

supervisory writ under Rule 809.18, Stats. Rule 809.18 refers to dismissal of "an appeal." A petition for a supervisory writ is not "an appeal." In contrast to a petition for leave to appeal, which is directed to the discretionary appellate authority, a petition for a writ of prohibition is directed to the supervisory power of the court of appeals. *See* Wis. Const. art. VII, § 5(3); § 752.02, Stats.; *see also* David L. Walther et al., Appellate Practice and Procedure in Wisconsin, §§ 2.3 & 10.1-.2 (1993); *State ex rel. Storer Broadcasting Co. v. Gorenstein*, 131 Wis. 2d 342, 347, 388 N.W.2d 633, 635-636 (Ct. App. 1986) (court of appeals exercised supervisory authority to issue writ of prohibition despite mootness of case).

"Article VII, sec. 5(3) of the Wisconsin Constitution and secs. 752.01 and 752.02, Stats., provide that the court of appeals has supervisory authority over all actions and proceedings in all courts except the supreme court." *United Pac. Ins. Co. v. Metropolitan Sewerage Comm'n*, 114 Wis. 2d 258, 263, 338 N.W.2d 298, 300 (Ct. App. 1983). The matter presented by this case comes within the supervisory jurisdiction of this court, as the issue of whether to release Peter B.'s identity to the media arose from a proceeding in the juvenile division of the state circuit court.

Apparently, the issue of whether a juvenile court judge has authority to order disclosure of a juvenile escapee's identity to the media is a recurring one.[5] No published decision has addressed the issue. Thus, although the release of Peter B.'s identity has rendered the issue moot in his case, we recognize that the issue

---

[5] According to the district attorney's brief, the same issue is "likely to arise frequently in the future." According to Peter B.'s brief, Judge Hansher "specifically stated that he wished to see his Order appealed and the issue litigated."

remains "of great public importance, it is likely to arise again, and almost inevitably review will be evaded because review cannot be taken promptly or without disrupting other important facets of a particular trial." *See State ex rel. La Crosse Tribune v. Circuit Court*, 115 Wis. 2d 220, 228-230, 340 N.W.2d 460, 464-465 (1983).

Thus, this case presents an issue of *publici juris*, "that is, one of statewide concern." *State ex rel. Journal/Sentinel v. Jennings*, 141 Wis. 2d 618, 620, 415 N.W.2d 618, 519 (1987). " 'The court of appeals has power to decide questions *publici juris* which are brought to it by appeal or which it considers under its supervisory jurisdiction.' " *Id.* Our supervisory authority "enables this court to intervene in an action pending in an inferior court in appropriate circumstances where necessary to protect the legal rights of a litigant when the ordinary processes of action are inadequate to meet the situation." *United Pac. Ins. Co.*, 114 Wis. 2d at 263-264, 338 N.W.2d at 300. RULE 809.18, on the other hand, speaks to the appellate jurisdiction of the court of appeals. Nothing in the rule indicates any limitation of our supervisory or original jurisdiction. Therefore, we conclude that RULE 809.18 does not require dismissal of Peter B.'s petition for a supervisory writ under RULE 809.51. Accordingly, "in the interest of judicial economy and as guidance" to the juvenile courts, we address the issue. *See Gorenstein*, 131 Wis. 2d at 347, 388 N.W.2d at 635-636.

## III. STANDARD OF REVIEW

A writ of prohibition will not issue to prohibit a court from acting in the proper exercise of its powers and within its jurisdiction. *State ex rel. Kowaleski v.*

*District Court*, 254 Wis. 363, 372, 36 N.W.2d 419, 424-425 (1949), *overruled on other grounds, State ex rel. Jackson v. Coffey*, 18 Wis. 2d 529, 537, 118 N.W.2d 939, 944 (1963). To obtain a writ of prohibition, Peter B. must establish that the juvenile court deviated from clear and plain principles of law in authorizing disclosure to the media. *State ex rel. Prentice v. County Court*, 70 Wis. 2d 230, 235, 234 N.W.2d 283, 285 (1975). A challenge to judicial authority presents an issue of law that we review *de novo. In re R.W.S.*, 162 Wis. 2d 862, 869, 471 N.W.2d 16, 19 (1991). Additionally, whether the juvenile court's decision to order release of Peter B.'s identity to the media was statutorily permitted is a question of law, which we review without deference to the juvenile court. *See Ball v. District No. 4 Area Bd.*, 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

## IV.  DISCUSSION

Peter B. argues that the legislature has delineated the specific circumstances that allow disclosure of a juvenile's identity and records that otherwise would be confidential. *See* § 48.346, STATS., (authorizing limited disclosure to "[e]ach known victim of a child's act"); § 48.35(2), STATS., (authorizing limited disclosure of dispositional information to "qualified persons"); § 48.396(1), STATS., (authorizing limited disclosure to the media "for purposes of reporting news without the identity of the child"). He further argues that § 48.78(3), STATS., authorizes the Department of Health and Social Services, not the juvenile court, to release information to the public in the event a child escapes. Quoting *State ex rel. Harris v. Larson*, 64 Wis. 2d 521, 527, 219 N.W.2d 335, 339 (1974), Peter B. maintains, therefore, that the court had no authority to order dis-

closure of his identity to the media because " 'in accordance with . . . the maxim, *expressio unius est exclusio alterius* . . ., if the legislature did not specifically confer a power, it is evidence of legislative intent not to permit the exercise of the power.' "

The district attorney, on behalf of the State, and the attorney general, on behalf of the Circuit Court, respond that the juvenile court had authority to order disclosure. They do not agree, however, on the statutory basis or theory underlying that authority, variously contending that media representatives may be viewed as "qualified persons" to whom disclosure can be made under § 48.35(2), STATS., and that the authority to disclose information about an escapee provided to the department under § 48.78(3), STATS., should be interpreted to permit the juvenile court to exercise comparable authority. The attorney general further argues that the statutes "do not explicitly prohibit such an order" and, therefore, that this court should resort to rules of statutory construction to determine the legislature's intent that, the attorney general further contends, supports the juvenile court's decision. Because we conclude that § 48.78(2)(a), STATS., provides authority for the juvenile court to order disclosure under the circumstances of this case, we find it unnecessary to consider whether other statutory sections cited by the parties implicitly provide comparable authority under these or other circumstances.[6]

The sole purpose of determining the meaning of a statute is to ascertain the intent of the legislature. *In re J.A.L.*, 162 Wis. 2d 940, 962, 471 N.W.2d 493, 502

---

[6] *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

(1991). In determining legislative intent, we look to the plain language of the statute. *Id.* If the statute is clear on its face, our inquiry as to the legislature's intent ends and we must simply apply the statute to the facts of the case. *See id.*

Section 48.78, STATS., provides, in relevant part:

**48.78 Confidentiality of records. (1)** In this section, unless otherwise qualified, "agency" means the department, a county department . . ..[7]

**(2)** (a) No *agency* may make available for inspection or disclose the contents of any record kept or information received about an individual in its care or legal custody, except *as provided under sub.(3) . . . or by order of the court.*

. . . .

**(3)** If a child adjudged delinquent on the basis of a violation of s. . . . 948.60 . . . has escaped or has been allowed to leave a secured juvenile correctional facility for a specified time period and in the case of an authorized leave the child is absent from the facility for more than 12 hours after the expiration of the specified period, the department may release the child's name and any information about the child the department determines to be necessary for the protection of the public or to secure the child's return to the facility. The department shall

---

[7] Section 48.02(4), STATS., states that " '[d]epartment' means the department of health and social services." Section 48.02(2g), in relevant part, states that " '[c]ounty department' means a county department under § 46.215 . . . unless the context requires otherwise." Section 46.215, STATS. defines the county Department of Social Services in counties with a population of 500,000 or more. The juvenile court order in this case referred to the Milwaukee County Department of Social Services, which had court-ordered responsibility to supervise Peter B.'s probation and residential treatment.

promulgate rules establishing guidelines for the release of the child's name or information about the child to the public.

(Emphasis added.)

Section 48.78(2)(a), STATS., provides two bases of authority for an agency[8] to disclose records: either "under sub. (3)" with the specific limitations of that subsection, or "by order of the court." The limitation of the department's authority under § 48.78(3) does not foreclose a juvenile court from exercising discretion to order an agency to disclose records or information "by order of the court" under § 48.78(2)(a). The fact that the department must promulgate rules as a prerequisite to the exercise of its authority to release information under § 48.78(3), STATS., does not preempt the juvenile court's authority to do so under § 48.78(2)(a). To conclude otherwise would be to elevate the authority of the department, responsible for carrying out juvenile court orders, above the authority of the court itself and thus render meaningless the statutory authority: "by order of the court."

■

In this case, the juvenile court carefully considered both the public's protection and Peter B.'s best interest, and reasonably exercised discretion in ordering disclosure. As the juvenile court emphasized, confidentiality remains a critical component of juvenile court proceedings. "Confidentiality is essential to the goal of rehabilitation, which is in turn the major purpose of the separate juvenile justice system." *State ex rel. Herget v. Waukesha Co. Cir. Ct.*, 84 Wis. 2d 435, 451,

---

[8] Pursuant to § 48.78(1), STATS., "agency" can mean either the state department of health and social services, or the county department of social services.

267 N.W.2d 309, 316 (1978). Any compromise of essential confidentiality must be ordered only with the utmost care. In this case, consistent with those principles and the authority of § 48.78(2)(a), STATS., we conclude that the juvenile court reasonably exercised its discretion.

*By the Court.*—Petition for leave to appeal dismissed; writ denied.

FINE, J. (*dissenting*). Although I agree with the majority's substantive analysis of the legal issue—namely, whether a trial court assigned to exercise jurisdiction under the Children's Code, ch. 48, STATS., may release to the media the name, photograph, and other identifying information of a juvenile who has escaped from custody, I dissent because: (1) I do not believe Peter B.'s lawyer had standing to seek review of the trial court's order; and (2) I do not believe that we have jurisdiction.[1]

## I.

Lawyers are agents of their clients, and the lawyer's authority to act on the client's behalf is limited by

---

[1] I also disagree with the majority's praise of the statutorily-mandated cloak of confidentiality that is thrown over Children's Code proceedings. Majority op. at 72. In my view, confidentiality in delinquency matters is neither in the interest of the juvenile nor of the public. First, it gives juvenile delinquents the false impression that their crimes are less serious than they would be if committed by adults. This hinders acceptance of responsibility and thus retards, rather than advances, rehabilitation. Second, confidentiality prevents the community from fully protecting itself against the dangerous predators our revolving-door juvenile-justice system routinely releases.

scope of the client's commission. Thus, employment of a lawyer to defend an action does not, by virtue of that employment alone, authorize the lawyer to take an appeal from an adverse determination. *Hooker v. Village of Brandon*, 75 Wis. 8, 17, 43 N.W. 741, 744 (1889) (cited with approval in *Fidelity & Deposit Co. v. Madson*, 201 Wis. 609, 611-612, 231 N.W. 170, 171 (1930)). The rule in criminal cases is the same. As explained by the Court of Appeals of Oregon in a case where the defendant absconded:

> Defense counsel is attempting to prosecute this appeal without the defendant's authorization, and perhaps without his knowledge. This he lacks standing to do, and the appeal is dismissed.

*State v. Lyon*, 584 P.2d 345 (Or. Ct. App. 1978). There is no evidence in the record here that the assistant State Public Defender assigned to represent Peter B. was authorized by Peter B., or any guardian or guardian *ad litem* for Peter B., to file either the notice of appeal or the petition for a supervisory writ.[2] Indeed, as in *Lyon*,

---

[2] Juveniles are entitled to counsel—"an attorney acting as adversary counsel who shall advance and protect the legal rights of the party represented." Section 48.23(1) & (6), STATS. Just as with any lawyer representing any client, however, adversary counsel in matters arising under the Children's Code may not act on the client's behalf without the client's consent and authorization. *Cf. E.H. v. Milwaukee County*, 151 Wis. 2d 725, 736-738, 445 N.W.2d 729, 734 (Ct. App. 1989) ("appointed adversary counsel 'has the same function, duties and responsibilities as he would have if he were retained by the person involved as his or her own attorney' ") (proceeding under § 48.13, STATS.) (citation omitted). Thus, the Children's Code provides that where the juvenile's best interests may diverge from the juvenile's desires, the court should appoint a guardian *ad litem*. Section 48.235(3), STATS., requires that the guardian

Peter B. has absconded. By requiring Peter B.'s lawyer to prosecute the petition, over her objections, even though she has no authority to do so *and* her client has absconded, the majority gives her standing where she has none.[3]

## II.

The majority has turned this court into a venus flytrap, at least for those litigants who approach us with petitions for supervisory writs. This metamorphosis violates the general proposition that a litigant "may choose to pursue his action or abandon it," *see Maier v. Byrnes*, 121 Wis. 2d 258, 260-261, 121 N.W.2d 833 (Ct. App. 1984) (*habeas corpus* relief in trial court), unless to do so would prejudice other parties. This general rule has been codified in RULE 809.18, STATS.:

> An appellant may dismiss an appeal by filing a notice of dismissal. The notice must be filed in the court or, if not yet docketed in the court, in the trial

*ad litem* "function independently, in the same manner as an attorney for a party to the action, and shall consider, *but shall not be bound by*, the wishes of" the juvenile. (Emphasis added.) "If the guardian ad litem determines that the best interests of the person are substantially inconsistent with the wishes of such person, the guardian ad litem shall so inform the court and the court may appoint counsel to represent that person." *Ibid.* There is nothing in the record that indicates that either a guardian *ad litem* or a guardian, see § 48.023, STATS., was appointed for Peter B.

[3] I also question whether Peter B., having absconded from the court's jurisdiction, could either object to the trial court's order or maintain this appeal—even if he had authorized his attorney to take those actions. *See State v. Braun*, 178 Wis. 2d 249, 256-257 & n.2, 504 N.W.2d 118, 121-122 & n.2 (Ct. App. 1993) (discussing the "fugitive dismissal rule").

court. The dismissal of an appeal does not affect the status of a cross-appeal or the right of a respondent to file a cross-appeal.

No cross-appeal has been filed in this case, and the respondents have not indicated that they want to file a cross-appeal. Nevertheless, the majority refuses to permit the assistant State Public Defender to dismiss her petition for a supervisory writ because, frankly, the majority wants to decide this case. Without citation to any pertinent authority, the majority holds that the voluntary-dismissal rule does not apply to petitions for supervisory writs.[4]

I am not persuaded by the majority's rationale; indeed, logic dictates a contrary conclusion. Simply put, our supervisory authority "enables this court to intervene in an action pending in an inferior court in appropriate circumstances where necessary to protect the legal rights of a litigant when the ordinary processes of action are inadequate to meet the situation," *United Pac. Ins. Co. v. Metropolitan Sewerage Comm'n*, 114 Wis. 2d 258, 264, 338 N.W.2d 298, 300 (Ct. App. 1983)—it is not license to decide issues when the litigant bringing the case no longer seeks our protection, and where there is nothing to "prohibit."[5] In

---

[4] The Majority confuses our authority to decide cases that are moot with our authority to decide issues once the party seeking appellate relief decides to abandon the cause. Significantly, it cites *no* authority in support of the latter proposition.

[5] A writ of prohibition is an appropriate method of reviewing a trial-court decision "when the appeal comes too late for effective redress or is inadequate, when there is a need for such intervention to avoid great hardship or the complete denial of rights of a litigant, or when there is presented a question of great and immediate public concern." *State ex rel. Arnold v. County Court*, 51 Wis. 2d 434, 437, 187 N.W.2d 354, 356 (1971).

fact, the Majority recognizes that "[t]o obtain a writ of prohibition, Peter B. must establish that the juvenile court deviated from clear and plain principles of law." Majority op. at 69. Peter B. seeks to "establish" nothing; as noted, the record does not reveal that he has authorized filing the petition, and the assistant State Public Defender has filed a voluntary dismissal.

As judges, we may only decide cases that are properly before us; we are not, in Cardozo's well-known aphorism, "knight-errants roaming at will in pursuit of [our] own ideal of beauty and goodness." B. Cardozo, THE NATURE OF THE JUDICIAL PROCESS 141 (1921). The Majority's reliance on this court's supervisory authority as the basis for our jurisdiction in the face of the voluntary dismissal, grasps the knight-errant's lance, and is dangerous precedent.

---

The writ procedure is thus a more limited method of getting appellate relief than is an appeal; although the issues raised by a writ of prohibition may always be raised *via* an appeal, the converse is not true.